# Exhibit A

Statement of Interest of the United States

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UFCW LOCAL 1500 WELFARE FUND, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>      v.<br><br>THE NEW YORK AND PRESBYTERIAN HOSPITAL,<br><br>          Defendant. | Case No. 25-cv-5023 |
| CEMENT AND CONCRETE WORKERS DC BENEFIT FUND, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>      v.<br><br>THE NEW YORK AND PRESBYTERIAN HOSPITAL,<br><br>          Defendant. | Case No. 25-cv-5571 |

## STATEMENT OF INTEREST OF
## THE UNITED STATES OF AMERICA

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

NICOLE A. SARRINE
*Deputy Assistant Attorney General*

MARK H.M. SOSNOWSKY
*Acting Deputy Director of Civil Litigation*

JOHN M. BRIGGS
*Counsel to the Assistant Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
*Attorneys*

*United States Department of Justice*
*Antitrust Division*
950 Pennsylvania Avenue, NW
Washington, DC  20530

JILL C. MAGUIRE
*Acting Chief, Healthcare & Consumer Products Section*

GARRETT M. LISKEY
*Assistant Chief, Healthcare & Consumer Products Section*

PAUL J. TORZILLI
*Senior Litigation Counsel*

KARL D. KNUTSEN
DANIELLE DRORY
RAHUL A. DARWAR
STELLA J. MARTIN
*Attorneys*

*United States Department of Justice*
*Antitrust Division*
450 Fifth Street, NW
Washington, DC 20530
(202) 803-0483 (Phone)
danielle.drory@usdoj.gov

**TABLE OF CONTENTS**

INTEREST OF THE UNITED STATES.................................................................................1

STATEMENT OF LAW AND FACTS................................................................................2

ARGUMENT ........................................................................................................................4

I.  NYP MISSTATES REQUIREMENTS TO ESTABLISH MARKET POWER UNDER
    SECTION 1 OF THE SHERMAN ACT ...........................................................................4

II. NYP DISTORTS THE REQUIREMENTS FOR PROVING ANTICOMPETITIVE
    EFFECTS UNDER SECTION 1 OF THE SHERMAN ACT.....................................................6

i

**TABLE OF AUTHORITIES**

**CASES**

*Bd. of Trade of City of Chicago v. United States*,
246 U.S. 231 (1918) ...........................................................................................8

*Broadway Delivery Corp. v. United Parcel Serv.*,
651 F.2d 122 (2d Cir. 1981)................................................................................4, 6

*Caruso Mgmt. Co. v. Int'l Council of Shopping Ctrs.*,
403 F. Supp. 3d 191 (S.D.N.Y 2019).................................................................9

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) ...........................................................................................3, 6

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
111 F.4th 337 (4th Cir. 2024) ............................................................................7

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ..............................................................................8

*Gamm v. Sanderson Farms, Inc.*,
944 F.3d 455 (2d Cir. 2019)................................................................................3

*In re Mission Health Antitrust Litig.*,
2024 WL 759308 (W.D.N.C. Feb. 21, 2024) ....................................................7

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
61 F.3d 123 (2d Cir. 1995)..................................................................................4

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) ...........................................................................................6

*Maric v. St. Agnes Hospital Corp.*,
65 F.3d 310 (2d Cir. 1995)..................................................................................3

*Medical Center at Elizabeth Place, LLC v. Premier Health Partners*,
2017 WL 3433131 (S.D. Ohio Aug. 9, 2017) …...................................................7

*N. Am. Soccer League, LLC, v. United States Soccer Fed'n*,
883 F.3d 32 (2d. Cir. 2018).................................................................................3

*Nat'l Collegiate Athletic Ass'n v. Alston*,
594 U.S. 69 (2021) .............................................................................................3

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.,*
468 U.S. 85 (1984) ...................................................................................................................... 4

*Nat'l Soc'y of Pro. Eng'rs v. United States,*
435 U.S. 679 (1978) .................................................................................................................... 3

*O'Bannon v. Nat'l Collegiate Athletic Ass'n,*
802 F.3d 1049 (9th Cir. 2015) .................................................................................................... 6

*Ohio v. Am. Express Co.,*
585 U.S. 529 (2018) ............................................................................................................ passim

*Roland Mach. Co. v. Dresser Indus., Inc.,*
749 F.2d 380 (7th Cir. 1984) ...................................................................................................... 8

*Standard Oil Co. of N.J. v. United States,*
221 U.S. 1 (1911) ........................................................................................................................ 3

*United States v. Blue Cross Blue Shield of Mich.,*
Case No. 10-cv-14155 (E.D. Mich. 2011) .................................................................................. 1

*United States v. Carolinas Healthcare Sys.,*
Case No. 3:16-cv-00311 (W.D.N.C. 2016).................................................................................. 1

*United States v. Charlotte-Mecklenburg Hosp. Auth.,*
248 F. Supp. 3d 720 (W.D.N.C. 2017)........................................................................................ 7

*United States v. Dentsply Int'l, Inc.,*
399 F.3d 181 (3d Cir. 2005).........................................................................................................3

*United States v. New York and Presbyterian Hospital,*
Case No. 1:26-cv-02480 (S.D.N.Y 2026)................................................................................... 1

*United States v. OhioHealth Corp.,*
Case No. 2:26-cv-207 (S.D. Ohio 2026)..................................................................................... 1

*United States v. Visa USA, Inc.,*
344 F.3d 229 (2d Cir. 2003)........................................................................................................ 6

*Uriel Pharmacy Health & Welfare Plan v. Advoc. Aurora Health, Inc.,*
2023 WL 12284689 (E.D. Wis. Apr. 28, 2023) .......................................................................... 7

*U.S. Airways, Inc. v. Sabre Holdings Corp.,*
105 F. Supp. 3d 265 (S.D.N.Y. Jan. 6, 2015) ............................................................................. 9

*U.S. Airways, Inc. v. Sabre Holdings Corp.,*
    938 F.3d 43 (2d. Cir. 2019) ................................................................................................ 3


**STATUTES**

15 U.S.C. § 1 ................................................................................................................................ 1

28 U.S.C. § 517 ........................................................................................................................... 1

**INTEREST OF THE UNITED STATES**

The United States submits this Statement of Interest under the authority of 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal or state court.

The United States has filed its own lawsuit challenging similar conduct to that challenged in these cases. *See United States v. New York and Presbyterian Hospital*, Case No. 1:26-cv-02480 (S.D.N.Y 2026) ("*United States v. NYP*"). Some of NYP's arguments in the present motion bear close resemblance to those it has made in response to the United States' complaint in *United States v. NYP.* Indeed, at a recent status conference in *United States v. NYP*, NYP counsel represented to the court that the arguments in the present matter would also be persuasive for disposition in *United States v. NYP* even though NYP has not moved to dismiss the United States' complaint in that case. As a result, the United States has a specific interest in ensuring this Court does not adopt NYP's incorrect arguments.

Healthcare costs are a central source of financial strain for millions of Americans. The United States has a strong interest in ensuring that courts apply the correct legal principles when analyzing anticompetitive activity, including in the healthcare sector. The United States has challenged anticompetitive activity in this sector—including contractual restraints that are similar in their effect to the challenged restraints—under Section 1 of the Sherman Act, 15 U.S.C. § 1. *See, e.g.*, *United States v. NYP*; *United States v. OhioHealth Corp.,* Case No. 2:26-cv-207 (S.D. Ohio 2026); *United States v. Carolinas Healthcare Sys.,* Case No. 3:16-cv-00311 (W.D.N.C. 2016); *see also United States v. Blue Cross Blue Shield of Mich.*, Case No. 10-cv-14155 (E.D. Mich. 2011). In addition, the United States has filed amicus briefs and statements of interest in other cases regarding the appropriate application of Section 1 of the Sherman Act in the healthcare sector. *See, e.g.*, Statement of Interest on Behalf of the United States of America,

1

*Marion Healthcare LLC v. S. Ill. Healthcare*, Case No. 3:12-cv-00871 (S.D. Ill. 2018); Brief for the United States and the Federal Trade Commission as Amici Curiae in Support of Petition for Rehearing, *Blue Cross and Blue Shield United of Wis. et al. v. Marshfield Clinic and Sec. Health Plan of Wis.*, Case Nos. 95-cv-1965, 95-cv-2140 (7th Cir. 1995).

Defendant, the New York and Presbyterian Hospital ("NYP"), submitted a motion to dismiss Plaintiffs' complaint, Motion to Dismiss ("MTD"), ECF 43, that does not fully and correctly state the legal standard required to establish market power. The Motion to Dismiss also incorrectly states the elements required to establish Plaintiffs' claims brought under Section 1 of the Sherman Act. Contrary to NYP's suggestion, although Plaintiffs in this case must allege anticompetitive effects, the specific anticompetitive effects that NYP references in their Motion to Dismiss—exclusionary effects and rival foreclosure—are not necessary elements of Plaintiffs' claim.

## STATEMENT OF LAW AND FACTS

In their consolidated class action complaint, Plaintiffs plead that NYP has violated Section 1 of the Sherman Act. Consolidated Class Action Complaint ("Complaint"), ECF 32, at ¶ 209. Plaintiffs allege that NYP has market power in the market for inpatient general acute care ("inpatient GAC") hospital services in multiple relevant geographic markets no larger than the five boroughs of New York City. Compl. at ¶¶ 2, 138. Plaintiffs allege evidence of NYP's market power, including NYP's supracompetitive prices, size, and reputation. Compl. at ¶¶ 150–52, 165, 167–68. According to Plaintiffs' complaint, this market power has enabled NYP to impose anticompetitive contractual restraints, including forcing insurers, as a condition of including any NYP facilities in their networks, to agree to anticompetitive "all-or-nothing" and "anti-steering" terms. Compl. at ¶¶ 11, 211. These allegations place NYP's contractual restrictions squarely within the scope of enforcement under Section 1 of the Sherman Act.

2

To prove a violation of Section 1 of the Sherman Act, plaintiffs must establish "(1) a contract, combination, or conspiracy; (2) in restraint of trade; (3) affecting interstate commerce." *See Gamm v. Sanderson Farms, Inc.,* 944 F.3d 455, 465 (2d Cir. 2019) (quoting *Maric v. St. Agnes Hospital Corp.*, 65 F.3d 310, 313 (2d Cir. 1995)). "Restraints can be unreasonable in one of two ways." *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018) ("*Amex*"). Some restraints are per se unreasonable based on their inherently anticompetitive "nature and character." *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 64–65 (1911); *see, e.g.*, *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 89 (2021). Restraints that are not per se unreasonable, such as the alleged restraints in the immediate case, are analyzed under the "rule of reason." *See U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 55 (2d. Cir. 2019); *see also Amex*, 585 U.S. at 541. When applying the rule of reason, courts must "conduct a fact-specific assessment of 'market power and market structure ... to assess the [restraint]'s actual effect' on competition." *Amex,* 585 U.S. at 541 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768 (1984)).

When assessing restraints under the rule of reason, the key determination is "whether the challenged agreement is one that promotes competition or one that suppresses competition." *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 691 (1978). Under the rule of reason, courts consider a wide range of competitive harms, including direct evidence of "reduced output, increased prices, or decreased quality in the relevant market," as well as, under the indirect approach, "proof of market power plus some evidence that the challenged restraint harms competition." *Amex,* 585 U.S. at 541–42; *see also N. Am. Soccer League, LLC, v. United States Soccer Fed'n*, 883 F.3d 32, 42 (2d. Cir. 2018). Additional types of competitive harm include a reduction of consumer choice, *United States v. Dentsply Int'l, Inc.,* 399 F.3d 181, 194 (3d Cir.

3

2005), and harm to the competitive process—the "most significant" kind of anticompetitive effect. *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 107 (1984).

In this statement, the United States addresses the appropriate legal standards for assessing allegations of market power as well as NYP's arguments that Plaintiffs failed adequately to plead anticompetitive effects. The United States takes no position on NYP's other arguments.

## ARGUMENT

NYP's motion to dismiss misstates and misapplies the legal standards governing Section 1 claims. Accepting NYP's assertions of the proper legal standard to assess anticompetitive restraints under Section 1 of the Sherman Act would upend longstanding legal precedent and unduly burden similarly situated plaintiffs. The Court should reject NYP's motion to dismiss Plaintiffs' claims accordingly.

**I.      NYP MISSTATES REQUIREMENTS TO ESTABLISH MARKET POWER UNDER SECTION 1 OF THE SHERMAN ACT**

NYP's submission argues that Plaintiffs fail to demonstrate NYP's market power and that Plaintiffs do not allege "substantial or problematic market shares." MTD at 3. Yet, this assertion fails to acknowledge that market power may be shown *either* directly or indirectly. *See Amex,* 585 U.S. at 541–42. Market power may be shown directly with evidence of "specific conduct indicating the defendant's power to control prices or exclude competition." *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 129 (2d Cir. 1995) (quoting *Broadway Delivery Corp. v. United Parcel Serv.*, 651 F.2d 122, 126–27 (2d Cir. 1981), *cert. denied,* 454 U.S. 968 (1981)). In addition, market shares may be used as a proxy for market power. *Id.* While either is sufficient, Plaintiffs have pled both in the alleged relevant markets.

NYP's reliance on *Amex's* footnote 7 to undercut Plaintiffs' market power allegations is misplaced. Under the Supreme Court's logic, plaintiffs must typically define a market in a case involving vertical restraints. *See Amex*, 585 U.S. at 545 n.7. Nothing in the cited footnote precludes a showing of direct evidence of market power in the alleged market in this case. Indeed, it is wholly inapplicable as Plaintiffs have properly alleged a relevant market *and* have shown that NYP possesses market power. *See* Compl. ¶¶ 132, 138, 150.

Plaintiffs' complaint alleges significant direct evidence of NYP's market power. Plaintiffs claim that NYP is "the most expensive hospital system in New York City" and maintains "the ability to persistently and profitably charge prices above those that would be charged in a competitive market." Compl. ¶¶ 105, 150, 152. These supracompetitive prices are the result of the material bargaining power that NYP has in insurer negotiations. Compl. ¶¶ 151, 154–56. Plaintiffs also allege that NYP's market power is reflected in non-price contractual terms, including the challenged restraints. Compl. ¶¶ 153, 155, 159. Among other detrimental effects, these restrictions exclude other hospitals with prices lower than NYP from obtaining greater patient volume. Compl. ¶ 169.

The complaint similarly alleges indirect evidence of NYP's market power. Plaintiffs claim that NYP's size contributes to its substantial market power, as NYP is the largest hospital in New York City. Compl. ¶¶ 1, 165. Indeed, NYP controls "more than 30%" of the Manhattan market and "more than 25%" of the four-borough market. Compl. ¶ 165. These market shares allegedly understate NYP's competitive significance, as NYP's renown, reputation, and "perceived status" among certain segments of consumers in New York City have solidified its substantial market power in the relevant markets. Compl. ¶ 167. NYP's market power is further

reinforced by the structure of the relevant markets, which Plaintiffs allege have "extremely high barriers to entry relative to other product markets." Compl. ¶ 135.

NYP claims that Plaintiffs do not "allege substantial or problematic market shares." MTD at 3. But courts have long avoided establishing threshold shares for market power and instead must also consider other aspects of market structure, including barriers to entry. *See, e.g., Broadway Delivery Corp.*, 651 F.2d at 128 (refusing to adopt market share thresholds, noting that "the true significance of market share data can be determined only after careful analysis of the particular market"); *United States v. Visa USA, Inc.*, 344 F.3d 229, 240 (2d Cir. 2003) (sustaining district court finding that MasterCard exercised market power with approximately 26% of the market). NYP's characterization of Plaintiffs' alleged shares ignores that courts must consider various other indications of market power that Plaintiffs address in their complaint.

## II. NYP DISTORTS THE REQUIREMENTS FOR PROVING ANTICOMPETITIVE EFFECTS UNDER SECTION 1 OF THE SHERMAN ACT

NYP argues that Plaintiffs' failure to allege exclusionary contracts and foreclosure of rivals is fatal to their claim. MTD at 3. In doing so, NYP misstates the requirements for proving anticompetitive effects. To satisfy the elements of their alleged Section 1 claim, Plaintiffs need only show that NYP's contractual restrictions are "unreasonable restraints of trade effected by a contract, combination, or conspiracy." *Copperweld,* 467 U.S. at 768. The requisite showing of anticompetitive effects under the rule of reason is not limited to those that are exclusionary. There also are collusive effects involving a decrease or softening in the intensity of competition among rivals. *See, e.g.*, *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007) (noting vertical minimum-resale-price agreements can violate rule of reason when

facilitating cartels); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1071–72 (9th Cir. 2015) (relying on a collusive effect to find that plaintiff satisfied initial burden under the rule of reason). And "anticompetitive conduct comes in many different forms that cannot always be categorized." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 355 (4th Cir. 2024).

Courts analyzing the type of anti-steering restrictions Plaintiffs challenge have found many other anticompetitive effects sufficient to support a Section 1 claim. For example, the United States and the State of North Carolina brought a Section 1 action against Carolinas Healthcare System (now called Atrium Health) relating to hospital steering restrictions. In that case, the court determined that plaintiffs adequately alleged a claim based on both direct and indirect evidence of anticompetitive effects, including allegations that the provisions increased healthcare expenses, inhibited price competition, and thwarted provider efficiency and innovation. *United States v. Charlotte-Mecklenburg Hosp. Auth.,* 248 F. Supp. 3d 720, 730–33 (W.D.N.C. 2017). Other cases involving hospital steering restrictions relied on other allegations of anticompetitive effects to support a Section 1 claim. *See In re Mission Health Antitrust Litig.*, 2024 WL 759308, at *10 (W.D.N.C. Feb. 21, 2024) (holding that plaintiffs "plausibly assert[ed] that Defendants' conduct has harmed competition" and rejecting motion to dismiss in hospital steering case); *see also Uriel Pharmacy Health & Welfare Plan v. Advoc. Aurora Health, Inc.,* 2023 WL 12284689, at *3 (E.D. Wis. Apr. 28, 2023).[1] These prior decisions underscore the

---

[1] *Medical Center at Elizabeth Place, LLC v. Premier Health Partners* turned on plaintiff's choice to exclusively plead *per se* violations under Section 1 of the Sherman Act. 2017 WL 3433131, at *14–17, *20 (S.D. Ohio Aug. 9, 2017). The court acknowledged that the rule of reason should instead apply to the plaintiff's claims and that a finding on the competitive effects of the contractual restrictions "must be made only after considering all relevant factors under a full rule of reason analysis." *Id*. at *16–17. Thus, although its facts are distinguishable, this decision supports denying the present motion as well.

strength of Plaintiffs' claims that the contractual restrictions at issue are anticompetitive and further undercut NYP's argument that Plaintiffs' failure to allege exclusionary conduct "kills their claim." MTD at 3.

In its Motion to Dismiss, NYP selectively quotes from the Supreme Court's *Amex* decision, omitting a key portion of the quotation that reads: "there is nothing inherently anticompetitive about **Amex's** antisteering provisions." *Amex*, 585 U.S. at 551 (emphasis added). In the context of the decision, this language acknowledges that restraints that are not per se unreasonable are subject to the "rule of reason," which requires courts to engage in a "fact-specific assessment." *Id.* at 541. NYP therefore overstates the Supreme Court's finding about the anticompetitive nature of *Amex*'s steering restrictions and ignores the requisite assessment of its restraints under the rule of reason, which depends on the specific circumstances alleged. *See Bd. of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918). Other courts have found that anti-steering provisions are not immune from antitrust enforcement. *See Epic Games, Inc. v. Apple, Inc.,* 67 F.4th 946, 1002 (9th Cir. 2023) (emphasizing *Amex* was "not a blanket approval of anti-steering provisions").

NYP similarly misstates the role of foreclosure in a Section 1 analysis. Like exclusionary conduct, foreclosure of rivals is not a required element of Plaintiffs' Section 1 claim. NYP cites to *Roland,* an exclusive dealing case under Section 3 of the Clayton Act—not the Sherman Act— and misconstrues the included quote by omitting the court's specification of "exclusive-dealing agreement[s]" when describing the requirement that at least one significant competitor must be kept from doing business in a relevant market. *Roland Mach. Co. v. Dresser Indus., Inc*., 749 F.2d 380, 394 (7th Cir. 1984). In cases that do not allege exclusive dealing or tying, foreclosure is only one way of showing anticompetitive conduct. In *U.S. Airways,* the court dismissed

arguments that the plaintiff was required to show "substantial foreclosure of the market" and "identify actual excluded competitors." *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 105 F. Supp. 3d 265, 281 (S.D.N.Y. 2015), *aff'd*, 938 F.3d 43 (2d Cir. 2019). The court held that "[w]hile such factors may be indicia of an actual adverse effect on competition, they are not the only indicia. An adverse effect also may be shown by evidence of increased prices, as [plaintiff] has done." *Id.*

Plaintiffs plead that NYP's anticompetitive contract provisions have an adverse effect on competition by preventing insurers from incentivizing members to obtain lower-cost care, thereby allowing NYP to charge higher prices and preventing price competition in the market for hospital services, preventing competition on quality, and decreasing consumer choice. Compl. ¶¶ 9, 25. Despite NYP's misguided framing, Plaintiffs also plead exclusionary effects by alleging that the restrictions NYP has imposed on insurers exclude NYP's lower-priced competitors from the opportunity to negotiate for greater volume through steered arrangements such as narrow-network plans. Compl. ¶ 67.

Plaintiffs' allegations of adverse effects on competition satisfy the "unreasonable restraint of trade" requirement of Section 1 claims as described above. *Caruso Mgmt. Co. v. Int'l Council of Shopping Ctrs.*, 403 F. Supp. 3d 191, 201 (S.D.N.Y 2019) (holding that "[i]n order to show an unreasonable restraint of trade... a plaintiff must identify the relevant market that is subject to the restraint and then demonstrate the restraint's adverse effects on competition in the market").

For the reasons stated above, the Court should decline to follow NYP's misstatements of law and apply the proper legal framework when analyzing Plaintiffs' claims.

Dated: July 6, 2026                                     Respectfully submitted,

                                                        /s/  Danielle Drory

9

STANLEY E. WOODWARD, JR.
*Associate Attorney General*

NICOLE A. SARRINE
*Deputy Assistant Attorney General*

MARK H.M. SOSNOWSKY
*Acting Deputy Director of Civil Litigation*

JOHN M. BRIGGS
*Counsel to the Assistant Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
*Attorneys*

*United States Department of Justice*
*Antitrust Division*
950 Pennsylvania Avenue, NW
Washington, DC  20530

JILL C. MAGUIRE
*Acting Chief, Healthcare & Consumer Products Section*

GARRETT M. LISKEY
*Assistant Chief, Healthcare & Consumer Products Section*

PAUL J. TORZILLI
*Senior Litigation Counsel*

KARL D. KNUTSEN
DANIELLE DRORY
RAHUL A. DARWAR
STELLA J. MARTIN
*Attorneys*

*United States Department of Justice*
*Antitrust Division*
450 Fifth Street, NW
Washington, DC 20530
(202) 803-0483 (Phone)
danielle.drory@usdoj.gov


*Attorneys for the United States of America*

10

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that the total number of words in this statement,

excluding the caption, signature block, and word count certification is 2,801.

/s/ Danielle Drory
*United States Department of Justice*
*Antitrust Division*
450 Fifth Street, NW
Washington, DC 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2026, I electronically filed the foregoing brief by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Danielle Drory
*United States Department of Justice*
*Antitrust Division*
450 Fifth Street, NW
Washington, DC 20530