# Proskauer

Proskauer Rose LLP   1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

July 16, 2026

Colin R. Kass
202.416.6890
ckass@proskauer.com

Re:     *U.S. v. NYP, 26-cv-2480 (S.D.N.Y.)*[1]

Dear Judge Engelmayer,

NYP seeks an order compelling compliance with its June 8, 2026 subpoenas to Aetna, Inc. and Aetna Health Inc.  In the five weeks since service, Aetna has not produced or even offered to produce a single document, provided organization charts, or engaged in any custodian discussions. Instead, it propounded a litany of boilerplate objections to *every* request.

Because discovery from Aetna is critical, this Court should overrule Aetna's objections and enter a two-step order.  *First*, within seven days, Aetna should produce documents sufficient to identify the employees involved in provider contracting, network and plan benefit design, and competitive or financial analysis, so that NYP can promptly identify up to 15 individuals for a proper custodian search.  *Second*, within 60 days, Aetna should produce documents responsive to the subpoena from those custodians and any other centralized database or repository.

## A.     *Discovery From Aetna (and the Other Four Dominant Insurers) is Critical.*

This case has the potential to dismantle the longstanding relationship between healthcare providers and insurers.  Having pursued its campaign against two providers in smaller markets, the DOJ now trains its sights on the nation's largest healthcare market: New York City and its environs, where five "dominant" insurers control patient access through a complex array of plan benefit penalties and incentives.  Cmplt. ¶ 26; *U.S. v. Anthem, Inc.*, 16-cv-01493, ECF 1 ¶ 6 (D.D.C. July 21, 2016).  Insurers' power to steer – power that the DOJ now seeks to *enhance* – gives insurers, in the DOJ's own words, a "demonstrated ability to exercise that power by … raising [insurance] prices, [and] restricting [provider] output."  *U.S. v. Blue Cross Blue Shield of Michigan*, 10-cv-14155, ECF 1 ¶ 34 (E.D. Mich. Oct. 18, 2010).

Indeed, the provision DOJ now challenges *in this case* is actually a weapon wielded by insurers, including *Aetna*, to exploit their monopsony power.  As the DOJ once noted, "Aetna's All Products clause" enables it to "depress … reimbursement rates …, likely leading to a reduction in quantity or  degradation in the quality of provider services."  *U.S. v. Aetna, Inc.*, 99-cv-1398, ECF 1 ¶ 32-33 (N.D. Tex. June 21, 1999).

The importance of insurer discovery to *every element* of the DOJ's case cannot be overstated. The DOJ alleged a market spanning 50 to 60 hospitals across New York City, and the competitive dynamics of that market — steering, network design, plan benefits, reimbursement negotiations, and the use of the challenged provisions across competing providers — play out primarily in insurers' files.  The DOJ is not a market participant. NYP, as a single provider, has visibility only into its own contracts and its own negotiations.  In contrast, the five dominant

---

[1] Unless otherwise noted, all emphasis added, internal citation and quotation marks omitted, and capitalizations and punctuation conformed without brackets.  NYP certifies that it met and conferred with Aetna via Zoom on July 13, 2026, after exchanging several letters, but was not successful in resolving the dispute. *See* Exs. 3-5.

# Proskauer

insurers are the sole repositories of the market-wide information this case requires.  That renders discovery from them indispensable.

This Court already recognized as much.  At the Initial Case Management Conference, the Court noted that insurer discovery is going to be a "big deal" because it goes to the central question of "who's driving the bus here, which is to say who is the source of the provision at issue?  Is this being driven by New York Presbyterian?  Is it being driven by New York Presbyterian and like hospitals?  Is it being driven by the insurance industry or otherwise?"  June 25, 2026 Hrg. Tr. 30-32.  Answering that question, the Court observed, is like "essentially doing some archeology on the course of negotiations and dealings in what amount[s] to five different chapters."

## B.    Aetna Refused to Identify Custodians or Produce a Single Document.

Consistent with the importance of insurer discovery, NYP served a subpoena seeking documents tracking the allegations of the Complaint and the issues raised by NYP's detailed Answer:  steering; network and plan benefit design; Aetna's contractual relationships with NYP and other competing providers; its monopsony or bargaining power; and its reimbursement rates.  Ex. 1.  This is core information similar in nature to the information the DOJ now seeks in its later-served, follow-on subpoena, underscoring the importance of this discovery.  *See* Ex. 6.

On June 22, 2026, Aetna served its Objections to the subpoena.  Ex. 2.  Aetna did not offer to produce a single document in response to any of NYP's 75 requests.  The chart below sets out the topics NYP sought and Aetna's uniform refusal to produce:

- Organization Structure and Relevant Employees (*Section A, RFPs 1-2*).
- Health Plans and Networks (*Section B, RFPs 3-4*)
- Steering, Anti-Steering, or Network Placement (*Section C, RFPs 5-17*).
- The Interplay Between Plan Benefits, Network Design, Provider Volume, and Member or Customer Demand Satisfaction (*Section D, RFPs 18-21*).
- Designated-Provider Programs (*Section E, RFPs 22-24*).
- Insurer or Provider Bundling or Cross-Subsidization. (*Section F, RFPs 25-26*).
- Stage One and Stage Two Price Competition. (*Section G, RFPs 27-29*).
- Contractual Relationship with NYP.  (*Section H, RFPs 30-37*).
- Contractual Relationships with Competing Providers (*Section I, RFPs 38-41*).
- Limited Provider Networks or Plans (*Sections J, RFPs 42-43*).
- Insurer Bargaining and Competitive Position (*Section K, RFPs 44-48*).
- Reimbursement Rates (*Section L, RFPs 49-52*).
- Financial Statements, Board Materials, and Reports (*Section M, RFPs 53-55*).
- Geographic Scope of Competing Health Plans, Providers, and Network Adequacy. (*Section N, RFPs 56-58*).
- Marketing Materials re Network Design and Premiums (*Section O, RFPs 59-61*).
- Structured Data (*Section P, RFPs 62-66*)
- DOJ and Lobbying Materials Relating to NYP (*Section Q, RFP 67-68*).
- Steering Suits and Investigations (*Section R, RFPs 69-70*).
- Insurer Monopsony Power Suits and Investigations (*Section S, RFP 71-73*).
- Specific Competitive Episodes.  (*Section T, RFPs 74-75*).

| *Aetna Offers of Production* | | | | | | | | | |
| RFP | Offer | RFP | Offer | RFP | Offer | RFP | Offer | RFP | Offer |
|---|---|---|---|---|---|---|---|---|---|
| 1 | X | 16 | X | 31 | X | 46 | X | 61 | X |
| 2 | X | 17 | X | 32 | X | 47 | X | 62 | X |
| 3 | X | 18 | X | 33 | X | 48 | X | 63 | X |
| 4 | X | 19 | X | 34 | X | 49 | X | 64 | X |
| 5 | X | 20 | X | 35 | X | 50 | X | 65 | X |
| 6 | X | 21 | X | 36 | X | 51 | X | 66 | X |
| 7 | X | 22 | X | 37 | X | 52 | X | 67 | X |
| 8 | X | 23 | X | 38 | X | 53 | X | 68 | X |
| 9 | X | 24 | X | 39 | X | 54 | X | 69 | X |
| 10 | X | 25 | X | 40 | X | 55 | X | 70 | X |
| 11 | X | 26 | X | 41 | X | 56 | X | 71 | X |
| 12 | X | 27 | X | 42 | X | 57 | X | 72 | X |
| 13 | X | 28 | X | 43 | X | 58 | X | 73 | X |
| 14 | X | 29 | X | 44 | X | 59 | X | 74 | X |
| 15 | X | 30 | X | 45 | X | 60 | X | 75 | X |

*Legend:* "X" denotes RFPs where Aetna made no offer of production.  Pink shading reflects an offer to "meet and confer," but with no proposal or counteroffer.

Aetna's response was instead just a litany of boilerplate objections asserting that every request was irrelevant, "overly broad," "disproportionate to the needs of the case" and "unduly burdensome."  Because Aetna certainly possesses discoverable information, its objections do not comply with FRCP 34(b)(2)(C), which requires it to state "whether any responsive materials are being withheld on the basis of [each] objection," and provides that an "objection to part of a request must specify the part and permit inspection of the rest."

Proskauer

On July 7th, NYP asked Aetna to cure this deficiency; to provide information needed for a productive discussion about custodians and scope of search; and to share any "proposals [it has] for limiting any RFPs for which [it may be] willing to engage in some production." Ex. 4.

On the parties' July 13th Zoom conference, Aetna confirmed its refusal to produce any documents. *First*, it argued that NYP's subpoena asks for "every document" in Aetna's files. Of course, the subpoena does no such thing, but, based on that hyperbole, Aetna refused to engage in further discussion unless NYP withdrew its current requests and identified a handful of documents that were "most important." *Second*, Aetna reiterated its refusal to produce basic information about its structure or employee organization, preventing the parties from engaging in any discussion about custodians or databases. *Third*, while Aetna indicated in its objections that it was "willing to meet and confer" as to 14 requests, on the meet and confer, it offered *nothing* as to those 14 or the other 61 requests.

During the meet and confer, Aetna only raised two issues. *First*, Aetna objected that certain requests seek information beyond the DOJ's alleged Manhattan and Four Boroughs markets. That objection ignores both the pleadings and Aetna's own conduct. NYP's Answer squarely contests DOJ's market definition, and Aetna uses the challenged provisions in all types of markets and with all types of providers—a fact central to NYP's defense. In any event, *most* of NYP's requests are limited to New York City and the surrounding area, or to specifically identified competitors. The handful of RFPs that reach further are focused on Aetna's general contracting and network strategies, including its use of the challenged provisions. Any burden with respect to these requests is best handled through custodian and relational database identification, not arbitrary responsiveness cut-offs.

*Second*, Aetna objected that 5 out of the 75 requests are not date-restricted. Those five requests seek documents relating to Aetna's use of the All Products provision, its agreements and negotiations with NYP, and its agreements and negotiations with Competing Providers. Understanding the genesis and use of these provisions, who asked for them, what purpose they serve, and what effect they have on the market requires, as this Court noted, some historical archeology. Records, of course, may or may not exist. But any burden is best managed by custodian and data systems identification, not arbitrary date cut-offs.

### C.    *The Court Should Order Compliance with the Subpoena.*

Aetna's refusal to produce any documents – or even to share the information needed to define the scope of search – has left NYP with no choice but to seek the Court's intervention. Accordingly, NYP respectfully requests that the Court overrule Aetna's objections, require Aetna to produce its organization information within seven days, and compel Aetna to produce documents within the scope of the search (consisting of up to 15 custodians) within 60 days.

Respectfully submitted,

/s *Colin R. Kass*

Proskauer

## CERTIFICATE OF SERVICE

I certify that I will cause the foregoing document and all attachments to be served on counsel for Aetna, Inc. and Aetna Health Inc. via e-mail on July 16, 2026.


/s/ *Colin R. Kass*

Proskauer