# EXHIBIT 6

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York    ▾

| United States of America | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  26-cv-02480 |
| | ) | |
| The New York and Presbyterian Hospital | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                Aetna Inc.
            151 Farmington Ave.; Hartford, CT 06156 c/o Rani Habash, Esq.
                      *(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule

| Place: U.S. Dept. of Justice, Antitrust Division<br>201 Varick St., Room 1006<br>New York, NY 10014 | Date and Time:<br><br>07/27/2026 4:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/06/2026

            *CLERK OF COURT*
                                              OR
                                                          /s/ Serajul F. Ali
_____          _____
   *Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiff United States of America                                    , who issues or requests this subpoena, are:

Serajul F. Ali; U.S. DOJ; 450 Fifth St. NW, Suite 4100; Washington, DC 20530; serajul.ali2@usdoj.gov; (202) 598-2423

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 26-cv-02480

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows: _____

Rani Habash, Esq. via email per agreement.

_____ on *(date)* 07/06/2026 ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Rule 45 Subpoena to Aetna Inc.

### Schedule of Requests

1. Submit all documents and data you produce, or have produced, to Defendant voluntarily or in response to any subpoena served by Defendant, in this Litigation and the Investigation that preceded this Litigation.

2. Submit one copy of each organizational chart or personnel directory in effect during the Relevant Period for the Company's senior executives and Managed Care contracting personnel in the Relevant Area.

3. Submit all agreements for the Relevant Insurance Product in the Relevant Area between the Company and each of the following entities: Defendant; Northwell Health; Mount Sinai Health System; and NYU Langone Health.

4. Submit all documents relating to negotiations with Defendant regarding agreements for the Relevant Insurance Product in the Relevant Area, including communications between the Company and Defendant concerning the agreements' provisions.

5. Submit strategic plans, business plans, or other documents, including but not limited to any pricing and premium setting models, actuarial modeling, and consumer preference and enrollment studies used to inform negotiations with Defendant and other hospital systems, sufficient to show short-term or long-range strategies or objectives relating to the Company's Relevant Insurance Products, including Managed Care contracting, in the Relevant Area.

6. Submit documents sufficient to show whether employers in the Relevant Area seek to lower their own or their employees' health care costs and/or consider Steered Plans.

1

7.  Submit all documents relating to Steering for your Relevant Insurance Products in the State of New York, including documents concerning:

    a.  Actual Steering;

    b.  Attempts by anyone—including employers, government entities, and labor unions—to Steer patients;

    c.  Potential savings, including to members and employers, from Steering;

    d.  The effects of Steering on the hospital choices of members and employers;

    e.  Attempts by Defendant to stop or prevent Steering; and

    f.  Failed attempts to launch Steered Plans, including the reason for the failure.

8.  Submit documents sufficient to show all your health plans that currently Steer, and for each identified health plan, information about the network, benefit design, total membership in the State of New York, and total membership in each of the Four Boroughs that comprise the Relevant Area.

9.  For each finalized medical claim from January 1, 2021, to the present where the patient was covered by any of the Company's Relevant Insurance Products and resided in the State of New York, submit:

    a.  A unique claim identifier;

    b.  A unique patient identifier;

    c.  The subscriber identifier;

    d.  The relationship of the patient to the subscriber;

2

e.  The patient's (i) city, town, or village, (ii) county, and (iii) 5-digit zip code of residence;

f.  The patient's age;

g.  The patient's gender;

h.  The patient's policy group's (i) name and (ii) identifier;

i.  The dates of admission and discharge and/or the date(s) of visit(s) or procedure(s);

j.  The Type of Admission or Priority of Admission code;

k.  The Point of Origin for Admission or Visit code;

l.  The Discharge Status code;

m.  The Type of Bill code;

n.  The Place of Service code;

o.  The Type of Facility code;

p.  The primary and secondary Diagnosis Related Group ("DRG" or "MSDRG") codes associated with the patient's admission, and the primary and secondary diagnosis codes (ICD9 or ICD10);

q.  The primary CPT/HCPCS code(s) and modifier(s), revenue code(s), and any other code(s) used for billing;

3

r.  All CPT/HCPCS code(s) and modifier(s), revenue code(s), and any other code(s) used for billing; additionally, for each CPT, HCPCS or other code, provide the quantity of units billed;

s.  The billed charge(s);

t.  The contractually allowed amount(s);

u.  The amount(s) actually paid by the Company;

v.  The amount(s) paid by a secondary Payor and any other Payors;

w.  The identity or identities of a secondary Payor and any other Payors;

x.  The date(s) the Company paid;

y.  The copay(s), coinsurance(s), deductible(s), or other amount(s) paid or expected to be paid by the patient to the Provider;

z.  The Tax Identification Number (TIN) of the facility or organization;

aa. The name, address, NPI, and other identifiers of the billing Provider;

bb. The name, address, NPI, and other identifiers of the rendering Provider;

cc. The name, address, NPI, and other identifiers of any other Providers associated with the claim, as available;

dd. The NPI of the referring Provider;

ee. Whether the claim is paid in or out of network;

ff. Whether the Company was the primary Payor; and

4

gg. Whether there was a capitation, episodic, per diem, global, or other alternative payment arrangement covering the patient.

10. Separately for calendar years 2021, 2022, 2023, 2024, and 2025, for any member (including members that did not submit any claim) residing in the State of New York that was covered by any of the Company's Relevant Insurance Products in that year, submit:

   a. The member's unique patient identifier;

   b. The subscriber identifier;

   c. The relationship of the member to the subscriber;

   d. The member's (i) city, town, or village, (ii) county, and (ii) 5-digit zip code of residence;

   e. The member's age;

   f. The member's gender;

   g. The member's policy group's (i) name and (ii) identifier;

   h. The member's health plan sponsor's (i) name and (ii) identifier;

   i. The name of the member's Relevant Insurance Product;

   j. The unique health plan identifier of the member's Relevant Insurance Product;

   k. The first month of eligibility for the member;

   l. The last month of eligibility for the member;

   m. The funding type (e.g. self-insured, fully-insured);

5

n.  The line of business (e.g., individual, small group, large group);

o.  The total amount paid by the Company for the member's claims; and

p.  The total premiums collected from the subscriber (or the subscriber's employer) by the Company.

11. For each Relevant Insurance Product that the Company offered in the State of New York from January 1, 2021 to the present, submit:

a.  The name and unique health plan identifier of the Relevant Insurance Product;

b.  The first date that the Relevant Insurance Product was active;

c.  The last date that the Relevant Insurance Product was active;

d.  Provider network associated with the Relevant Insurance Product;

e.  The product type (e.g., PPO, HMO, EPO, POS);

f.  Whether the Relevant Insurance Product is a high deductible or consumer driven health plan;

g.  Whether the Relevant Insurance Product is a health savings account plan;

h.  Whether the Relevant Insurance Product is a single-tier Broad Network product, a single-tier Narrow Network product, or a Tiered Network product; and

i.  The number of subscribers and covered lives during each year of the Relevant Period.

12. For each Relevant Insurance Product identified in the data responsive to Request 11, submit documents, including data, sufficient to show each hospital or facility providing

6

inpatient services that was in-network in the Relevant Insurance Product at any time from January 1, 2021 to the present, and the dates for which the hospital or facility was in-network. In response to this specification, please provide data where available. Documents are sufficient if the requested data is unavailable or otherwise not kept by the Company in the ordinary course of business.

13. For each Relevant Insurance Product identified in the data responsive to Request 11, submit documents, including data, sufficient to show the plan design, benefits, and cost-sharing attributes of the Relevant Insurance Product from January 1, 2021 to the present. In response to this specification, please provide data where available. Documents are sufficient if the requested data is unavailable or otherwise not kept by the Company in the ordinary course of business.

14. Submit documents or data sufficient to show the actual or estimated effect on patients' choices of hospitals, total costs to the Company, prices for Relevant Insurance Products paid by employers, and out-of-pocket costs for the Company's members when any hospital or hospital system is taken out of network in the Relevant Area.

15. Submit documents or data sufficient to show the relative reimbursement rates, as expressed in the form of percentage of Medicare and otherwise, that the Company pays to each major hospital and hospital system in the Relevant Area, as assessed in the ordinary course of business. Include a description of how the relative reimbursement rates are calculated.

16. Submit documents or data sufficient to show the relative quality of hospital and hospital systems in the Relevant Area and any analyses of quality performed by the Company in

7

the ordinary course of business. Include documents describing how quality is measured or assessed.

17. Submit any internal analyses by the Company regarding where patients would go for care if (A) Defendant's hospitals were out-of-network; (B) Defendant's physicians were out-of-network; (C) Defendant's other facilities were out-of-network; or (D) out-of-pocket costs were to increase for any of Defendant's hospitals, physicians, or other facilities.

18. Submit any internal analyses, or policies, describing how the Company sets its premiums in the Relevant Area, including the potential impact on premiums if prices or volumes at Defendant's hospitals (or at other areas hospitals) were to decrease.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these requests should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. The definitions and rules of construction in Local Civil Rule 26.3(c) and (d) are incorporated by reference under Local Civil Rule 26.3(a). The definitions provided herein shall apply to the terms defined regardless of capitalization.

1. The term **"agreement"** means any understanding, formal or informal, written or unwritten between two or more Persons.

2. The terms **"and"** and **"or"** have both conjunctive and disjunctive meanings, and shall be construed as necessary to bring within the scope of the Subpoena all responses that might otherwise be construed as being outside of its scope.

3. The terms **"any,"** **"all,"** **"each,"** and **"every"** shall be construed as encompassing any and all.

4. The term **"Broad Network"** means a network that offers a full range of healthcare services to a Payor's members and is not significantly limited in the number of Providers in the network.

5. The term **"communications"** means without limitation communications in oral or written form, including electronic communications, e-mails, facsimiles, telephone communications (including text messages), instant messages, memoranda, writings, audio recordings, meetings, interviews, correspondence, exchange of written or recorded

9

information, face-to-face meetings, or any other form of transmission of information. The phrase "communications between" is defined to include instances where one party addresses the other party, but the other party does not necessarily receive the transmission or respond.

6.      The terms "**Company**" or "**you**" mean Aetna Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing.

7.      The term "**Defendant**" means The New York and Presbyterian Hospital, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all of their present and former directors, officers, employees, agents (including counsel and document vendors), representatives and any Person acting or purporting to act on their behalf. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between New York-Presbyterian and any other Person.

8.      The term "**document**" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, and will be interpreted consistently with any Local Rule. For the avoidance of doubt, "document" includes all electronically stored information, including all electronic communications and any attachments thereto (e.g., emails, text messages, and instant messages and all attachments to them), files, audio and/or video recordings, data, and databases. This term includes all metadata associated with each document. A draft or non-identical copy is a separate document within the meaning of this term. This term also includes all writings and hard copy

10

documents. A printout of an email or other electronic document, with or without writing or other markings, is a separate document within the meaning of this term.

9.     The term **"health plan"** means any health insurance plan, health benefit plan, or health benefit product providing coverage medical services, including commercial group plans (whether fully insured, self-funded, or administered on an administrative-services-only basis), individual and small-group plans, exchange plans, Medicare Advantage plans, Medicaid managed care plans, dual-eligible plans, FEHB plans, and TRICARE plans.

10.    The term "**including**" means including, but not limited to.

11.    The term "**Investigation**" means the investigation into potential anticompetitive contracting conduct by New York-Presbyterian Hospital conducted by the U.S. Department of Justice, Antitrust Division, that preceded the Lawsuit.

12.    The terms "**Lawsuit**" and "**Litigation**" mean *United States v. The New York and Presbyterian Hospital,* Case No. 1:26-cv-02480 (S.D.N.Y), the lawsuit filed by the United States against The New York and Presbyterian Hospital and pending in the United States District Court for the Southern District of New York.

13.    The term **"Managed Care"** means health plans that are focused on reducing costs while maintaining quality of care through methods including, but not limited to, aligning payment incentives with performance goals and Provider oversight.

14.    The term **"member"** means any person enrolled in or covered by a health plan, including subscribers, dependents, and beneficiaries.

11

15.    The term "**Narrow Network**" means a network composed of a significantly limited number of Providers that offers a range of healthcare services to a Payor's members.

16.    The term "**NPI**" means the National Provider Identifier number issued by the Centers for Medicare & Medicaid Services.

17.    The term "**Payor**" means any Person providing commercial health insurance or access to health care Provider networks, including managed-care organizations, and rental networks (i.e., entities that lease, rent, or otherwise provide direct or indirect access to a proprietary network of health care Providers), regardless of whether that entity bears any risk or makes any payment relating to the provision of healthcare.

18.    The term "**Person**" includes the Company, and means any natural person, corporate entity, partnership, association, joint venture, government entity, trust, or other legal entity. Any reference to a Person that is a business entity includes: that Person's predecessors (including any pre-existing Person that at any time became part of that entity after a merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, each other Person that is directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

19.    The terms "**Personally Identifiable Information**" or "**PII**" mean information or data that would identify an individual, including an individual's Social Security Number; or an individual's name, address, or phone number in combination with one or more of his

or her (a) date of birth; (b) driver's license number, or other state or federal government identification number, or a foreign country equivalent identification number; (c) passport number; (d) financial account number; or (e) credit or debit card number.

20. The term "**plans**" includes tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

21. The term **"Provider"** means all of any part of any Person delivering any healthcare service. For avoidance of doubt, two different hospitals owned by the same corporation, organization, or other business entity are each a Provider.

22. The terms "**relating to**," "**relate to**," and "**relating thereto**" mean in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

23. The term **"Relevant Area"** means the geographic area consisting of the Four Boroughs of Bronx, Brooklyn, Manhattan, and Queens in New York City.

24. The term "**Relevant Insurance Product**" means commercial health insurance products, including individual and family commercial plans, small group commercial plans, large group commercial plans, and including both fully insured and administrative services only (ASO) plans.

25. The term **"Relevant Period"** means the period from January 1, 2021 to the present.

26. The term "**Request**" refers to any request enumerated in the Schedule of Requests for this Subpoena.

13

27.  The terms **"Sensitive Health Information"** or **"SHI"** mean information or data about an individual's health, including medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

28.  The term **"Steer"** or **"Steering"** means a Payor providing any incentive to that Payor's members to seek care at specific health care Providers or types of health care Providers.

29.  The term **"Steered Plan"** means a **"Relevant Insurance Product"** that provides incentives to seek care at specific health care Providers or types of health care Providers.

30.  The term **"Tiered Network"** means a network of Providers (i) that a Payor divides into different sub-groups based on objective price, access, and/or quality criteria; and (ii) for which a Payor's members receive different levels of benefits when they use healthcare services from Providers in the different sub-groups.

14

## INSTRUCTIONS

1.  In addition to the specific instructions below, this Subpoena incorporates the instructions set forth in Federal Rules of Civil Procedure 34 and 45 and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

2.  Unless otherwise specified, this Subpoena seeks all responsive documents or data in the Company's possession, custody, or control that were created, modified, sent, or received during the Relevant Period. Requests 3 and 4 are not limited to the Relevant Period but seek responsive documents regardless of date.

3.  Any responsive document that has been altered, including by the addition of any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, or modifications, and other versions of a document is a responsive document in its own right and must be produced.

4.  For each responsive document, except for documents for which the Company claims a valid privilege, or contain any PII or SHI, produce the entire document along with all attachments, enclosures, or "family" members, and all metadata associated with each such document. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the Company must clearly indicate the portions as to which the privilege is claimed, and the Company must produce the part of the document that the Company does not claim is privileged, along with all "family" members and including all metadata. Each document must be produced in such a fashion, where applicable, to identify the natural person in whose

15

possession, custody, or control they were found, or the server or central file in which they were found. Produce a legible and usable copy of each document requested together with all non-identical copies and drafts of that document, consistent with the Antitrust Division's electronically stored information (ESI) Standard Specifications provided with these Requests. Subject to any protocol concerning electronically stored information agreed to by the parties or ordered by the Court, all metadata of electronic documents must also be produced. The Company must retain all of the original documents for inspection or copying throughout the pendency of this Lawsuit, any appeal(s), and any related proceedings.

5.  Subject to the Definitions and Instructions provided with this Subpoena, and any protocols concerning electronically stored information ordered by the Court or agreed to by the Plaintiff in the Lawsuit and the Company, produce hard copy documents and electronically stored information in the form of production set forth by the U.S. Department of Justice, Antitrust Division's ESI Standard Specifications provided with these Requests. Notwithstanding any other Instruction, hard copy documents must be submitted in the same order (organized by sequential document-control numbering) as they were found in the Company's files at the time the documents were collected, and must not be shuffled or otherwise rearranged. For any responsive text messages, produce the surrounding thread of texts involving the same participants in that 24-hour calendar day.

6.  If otherwise identical copies of a document are in the possession, custody, or control of more than one natural person or other document custodian, a copy of that document must be produced from each such natural person or other document custodian. The Company

16

may deduplicate to the extent permitted under and in compliance with the Antitrust Division's ESI Standard Specifications provided with these Requests.

7. If any document is withheld based on an objection to any Request, all other documents responsive to that Request not subject to the objection must be produced.

8. The specificity of any single Request shall not limit the generality of any other Request.

9. Where a claim of privilege or other protection from discovery is asserted in objecting to any Request or sub-part thereof, and any document is withheld (in whole or in part) on the basis of such assertion, with the exception of those communications that are exempt under the case management order in the Lawsuit, the Company shall provide a log ("Privilege Log") in Microsoft Excel format that identifies, for each document:

   a. The nature of the privilege or protection from discovery that is being claimed with respect to each document (including identification of whether the document is being withheld entirely or redacted);

   b. The following non-privileged metadata: all authors, addressees, and recipients of the document (including those copy recipients and blind copy recipients); the subject line (if an email) or the file name (if non-email); date of the document; type of document (*e.g.*, .pdf, Excel, .msg); Bates range; family Bates range, if applicable; and custodian(s). The Company shall also produce a separate index containing an alphabetical list (by last name) of each name on the Privilege Log, identifying titles (for party employees), Company affiliations, the members of any group or email list on the Privilege Log, where practicable (*e.g.*, Board of Directors), and any name variations used in the Privilege Log for the same

17

individual;

c.  A description of each document containing sufficient information to identify the specific subject matter of the document or communication and to enable Plaintiff to assess the applicability of the privilege or protection claimed and the name of the attorney(s) whose work gives rise to the privilege claim; and

d.  The identity of and any production Bates number assigned to any attachment(s), enclosure(s), cover letter(s), or cover email(s) of each document, including the information outlined in subsections above for each such attachment, enclosure, cover letter, or cover email.

Attachments, enclosures, cover letters, and cover emails shall be entered separately on the Privilege Log. The Privilege Log shall include the full name, title, and employer of each author, addressee, and recipient, denoting each attorney with the letters "ESQ," except that identification of the name and the company affiliation for each non-Company Person shall be sufficient identification. The Company shall also identify all Persons working in a legal capacity with respect to the withheld material other than attorneys, *e.g.,* paralegals and legal secretaries, who appear on the Privilege Log. Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments, enclosures, cover letters, and cover emails) for which a claim of privilege is asserted, noting where redactions to the document have been made. When responsive, privileged documents attached to responsive, non-privileged documents are withheld from production, insert a placeholder to indicate a document has been withheld from that family.

18

10. If the Plaintiff agrees to narrow the scope of any of these Requests to a limited group of custodians, a search of each custodian's files must include a search of the files of their predecessors or successors; files maintained by their assistants or under their control; and common or shared databases or data sources maintained by the Company that are accessible by each custodian, their predecessors, successors, or assistants.

11. If the Company is unable to produce a document that is responsive to a Request not due to a claim of privilege or other legal protection, describe the document, state why it cannot be produced, and, if applicable, state the whereabouts of such document when last in the Company's possession.

12. If the Company produces data in response to any Request, submit the data in Excel or delimited text files, and submit all Data Dictionaries applicable to the data produced. Submit all data in a reasonably usable compilation that will allow the Plaintiff to access with reasonable efforts the information it contains.

13. Except as specified, the fact that a document is in the possession of the Plaintiff in the Lawsuit, or is produced by another Person, does not relieve the Company of the obligation to produce all of the Company's copies of the same document, even if the Company's copies are identical in all respects to a document produced or held by another Person.

14. To the extent the Company contends that responsive documents in its possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to these Requests must identify the specific provisions of the protective order or agreement on which the

19

Company is relying and the efforts that the Company has undertaken and will undertake to provide notice and obtain consents.

15. Do not produce any PII or SHI before discussing the information with the Plaintiff. If any document responsive to a particular Request contains PII or SHI that is not otherwise responsive to that Request, redact the unresponsive PII or SHI before producing the document. Provide any index of documents prepared by any Person in connection with the Company's response to these Requests that lists such redacted documents by document control number. If the index is available in electronic form, provide it in that form.

16. In producing videos or podcasts, for any video or podcast publicly available on the Company's website, or published by the Company or its representatives on any other website (including YouTube), the Company may in the alternative submit written permission for the Plaintiff in the Lawsuit to download, preserve, and use any such video or podcast through the pendency of this Lawsuit. Should the Company choose this alternative, in the event the Plaintiff is unable to download and preserve any such video or podcast, the Company agrees to produce a copy of it upon written request.

17. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. Words in any gender form (including the masculine, feminine, or neuter) shall include each other gender.

18. If, in responding to these Requests, the Company encounters any ambiguities when construing a Request, instruction, or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

19. For each data field that responds to more than one Request or sub-Request, the Company must use a single methodology to assign values to that field and use that methodology consistently throughout its response. For example, values submitted for the unique patient identifier in Request 9 should link the records responsive to Request 9 to the corresponding unique patient identifier records in Request 10. Responses to Requests 12 and 13 must identify each Relevant Insurance Product by name and unique health plan identifier sufficient to link to the corresponding Relevant Insurance Product records in Request 11.

20. For responses to Request 9, limit to all finalized claims with service dates from January 1, 2021 to the present. Most of the information requested in Request 9 corresponds to elements found on the UB-04/CMS-1450 and CMS-1500 forms, and the HIPAA 837I and 837P electronic transaction sets. Conform all codes used to respond to Request 9 to the National Uniform Billing Committee's Official UB-04 Data Specifications Manual. A "finalized institutional claim" means any institutional claim that has completed adjudication and payment, including a claim with a zero payment amount. If a claim line has been replaced—for example, as a result of a claim resubmission—only include the last version of the line that was used to adjudicate the claim. If every line of a claim has been denied, the claim should be excluded from the table; but if any lines have been allowed, the claim should be included in its entirety.

21