

**DECHERT**

**Dechert LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797

**Gregory Chuebon**
*Partner*

July 21, 2026

greg.chuebon@dechert.com
+1 212 698 3887  Direct

Dear Judge Engelmayer,

Aetna, Inc. and Aetna Health Inc. (collectively, "Aetna") respectfully oppose the July 16, 2026 motion to compel filed by Defendant The New York Presbyterian Hospital ("NYP"). Aetna has committed to both NYP and Plaintiff ("DOJ") that it will cooperate to produce "what you need from Aetna within reason to defend your case." ECF No. 34-5 at 3. Aetna and DOJ have already had productive discussions regarding DOJ's subpoena. Aetna sought to engage NYP in the same manner, but NYP stated it would not agree to narrow any of its 75 specifications. NYP then abruptly ended the meet-and-confer after 7 minutes following Aetna's suggestion that "[t]his will need to be a two-way street if we're going to make any progress." *Id.* NYP's motion puts the cart before the horse, rushing to burden the Court without first making a good faith negotiation effort.

Aetna is willing to continue conferring with NYP toward an appropriately scoped production and realistic schedule. As a non-party, however, NYP must recognize Aetna is entitled to heightened protections against undue burden. *See Athalonz LLC v. Under Armour, Inc*., No. 24 Misc. 0047, 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024); *MG Freesites Ltd. v. Scorpcast, LLC*, No. 22 MISC. 361, 2023 WL 2822272, at *1 (S.D.N.Y. Apr. 7, 2023) (Engelmayer, J.) (granting motion to quash eight of nine requests in non-party subpoena under undue burden standard). Yet NYP's subpoenas contain 178 requests (including subparts) across 75 specifications and lack reasonable limitations. In contrast, DOJ—which carries the burden of proof—required only 18 specifications. ECF No. 34-6. NYP also seeks up to 15 custodians from Aetna—more than double the "six or seven [NYP] custodians" searched in DOJ's investigation. June 25, 2026 Hrg. Tr. 28-29. NYP does not cite a single case that supports enforcing such a burdensome subpoena on a non-party.

NYP's excuses for subjecting non-party Aetna to party-sized discovery do not justify the burdens: (1) NYP's own filings confirm Aetna is not a "dominant" insurer in NYC; (2) NYP's multiple lawsuit battles confirm it is "driving the bus" to preserve these provisions, whereas Aetna has repeatedly fought to serve its clients by removing them; and (3) NYP already possesses most of the documents it claims to need to answer the "central question" in the case. The Court should deny NYP's motion and quash the overbroad, unduly burdensome subpoenas.

### A.    Procedural Background

On June 8, 2026, NYP served Aetna's subpoenas. ECF No. 34-1. On June 22, 2026, Aetna served its responses and objections, ECF No. 34-2, and offered to meet that week. ECF No. 34-5 at 8. On July 7, NYP responded with a lengthy letter that did not contain a single proposal to narrow any of the 75 specifications. *See* ECF No. 34-4. Aetna sought to meet with NYP in good faith and requested that NYP consider "what you need from Aetna within reason to defend your case." ECF No. 34-5 at 3. During the meet-and-confer on July 13, Aetna reiterated its request for NYP to reconsider the scope of its requests. NYP declined, then refused a walkthrough of the specifications before terminating the meeting after 7 minutes.



### B. Rule 45 Requires Reasonableness and A Higher Bar for Non-Party Subpoenas

A party seeking discovery "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), and bears "the initial burden of proving that the information … sought in the subpoena is relevant and proportional to the needs of the case." *Athalonz,* 2024 WL 1555685, at *2. Whether a subpoena imposes an undue burden turns on factors including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (citation omitted). Courts have recognized non-party status is also "a significant factor" in this analysis, as is "whether the requested information can be obtained from the parties themselves." *Athalonz*, 2024 WL 1555685, at *3 (citations omitted).

An order compelling compliance "must protect" a non-party from "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). A subpoena that buries legitimate requests inside dozens of indiscriminate demands does not provide a basis for good-faith negotiation and should be quashed entirely. *See Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at *3 (S.D.N.Y. June 16, 2011) (quashing subpoena where requests "are buried in larger, over-broad discovery demands"); *Mackey v. IDT Energy, Inc.*, No. 19 MISC. 29, 2019 WL 2004280, at *6 (S.D.N.Y. May 7, 2019) (Engelmayer, J.) (quashing document request to non-party where "mass of materials could include items of relevance, but the request is so broad as to overwhelmingly seek clearly irrelevant materials*"*). Cost-shifting is "particularly appropriate" for non-party subpoenas "since Rule 45 directs courts to minimize the burden on non-parties." *See Contant v. Bank of Am. Corp.*, 1:17-cv-03139, 2020 WL 3260958, at *3 (S.D.N.Y. June 17, 2020) (citations omitted); *In re Subpoena to Loeb & Loeb LLP*, No. 19 MISC. 241, 2019 WL 2428704, at *5 (S.D.N.Y. June 11, 2019) (Engelmayer, J.) (granting cost sharing "in a manner that places the incentive on the parties to focus the production and minimize costs").

### C. NYP's Subpoenas Are Facially Overbroad and Unduly Burdensome

***NYP's subpoenas are plainly overbroad.*** The breadth of the requests is staggering: 178 requests, including subparts, spanning 75 specifications. Sixty-six specifications seek "all" documents from Aetna, which courts have found are "often [] a red flag for overbreadth and undue burden" or even "presumptively improper." *See Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687, 2023 WL 4353076, at *2 (S.D.N.Y. July 5, 2023) (citing *Optionality Consulting PTE. Ltd. v. Edge Tech. Group LLC*, No. 18-CV-5393, 2022 WL 1977746, at *3-4 (S.D.N.Y. June 3, 2022)). For comparison, DOJ's subpoena contains 18 specifications, most seeking targeted data or documents "sufficient to show" information.[1] ECF No. 34-6. Five NYP requests have no temporal limitation (*see* RFPs 9, 30, 31, 38, 39), three seek documents dating back to 1999, 2010, and 2016 (*see* RFPs 71-73), and all others seek 5 ½ years of materials. ECF No. 34-1. NYP seeks up to 15 custodians, even though NYP itself agreed to only "six or seven" in DOJ's investigation. Hrg. Tr. 28-29.

***NYP has not demonstrated the need for its party-sized requests.*** For example, several seek materials NYP already possesses (*see, e.g.*, RFPs 30-34, 37). Others impose no geographic limitation, seeking materials about more than 1 million providers in Aetna's networks nationwide

---

[1] Aetna and DOJ have made progress in subpoena negotiations. Once a protective order is entered, Aetna plans to begin rolling productions of priority items as soon as this week.



July 21, 2026
Page 3

(*see, e.g.,* RFPs 9, 12, 25-29, 38-39). Still others scope products and services not at issue, such as Medicare or Medicaid (*see, e.g.,* RFP 66). One request seeks information on all databases "containing information on members, providers, claims, contracts, networks, plans, products, rates, enrollment, utilization, or financial performance" (*see* RFP 62), which engulfs practically every company database. Aetna also objected to numerous other requests seeking information with little relevance to the NYC hospital competition or provisions at issue. *See* ECF No. 34-1. NYP made no effort to address these issues by, for example, eliminating requests for documents it already possesses, limiting requests to relevant products and areas, or not seeking "all" documents.

***The Subpoenas Pose Immense Burden on Aetna.*** Aetna estimates compliance with the subpoenas as written would cost well over $1 million, last more than a year, and substantially disrupt Aetna's business by exhausting hundreds of hours of employee time that otherwise would be spent serving employers and members. NYP also seeks productions in 60 days even though discovery is open until May 2027 and Aetna must simultaneously comply with DOJ subpoenas. NYP fails to show its requests are proportionate to its needs while avoiding undue burden.

**D.      NYP's Claimed Needs Do Not Justify Party-Sized Burdens**

This case is not as complex as NYP would have the Court believe. Through its contract terms, NYP is blocking the ability of NYC employers to use narrow or tiered networks that favor hospitals with more competitive prices. NYP claims party-sized discovery is needed to show Aetna is a "dominant" NYC insurer that is driving the provisions at issue. But NYP's Answer squarely addresses this topic without the need for millions of documents: NYP endorses an analysis showing Aetna's private insurance enrollment market share in NYC and surrounding counties is just 6.3%. ECF No. 22, at 4 n.5 (citing *Private Enrollment Market Share in N.Y. Counties*, Mark Farrah (June 19, 2023), https://tinyurl.com/6vmkm98s).

NYP states the "central question" to be answered through insurer discovery is, "[W]ho is driving the bus here, which is to say who is the source of the provision at issue?" ECF No. 34 at 2 (citing June 25, 2026 Hrg. Tr. 30-32). An archaeological expedition through millions of Aetna documents is unnecessary to answer it. Today, NYP is fighting multiple employer health plans and the government to preserve these provisions, which protect and perpetuate NYP's ability to charge employers higher prices. In direct communications to NYP, Aetna has repeatedly fought for its clients to remove these terms because they effectively block them from using cost-saving networks in NYC.[2] NYP fails to explain why its own documents do not provide the answers it is seeking.

The Court should deny NYP's motion and quash the subpoenas. Alternatively, Aetna asks that the Court direct NYP to resume the negotiation process.[3] While Aetna does not wish to further burden the Court, Aetna would welcome an informal conference if the Court believes it would be helpful.

Respectfully Submitted,

/s/ Gregory T. Chuebon                              cc: Rani Habash (*pro hac vice* motion forthcoming)

---

[2] In the NYC area, Aetna primarily serves as a third-party administrator ("TPA") for commercial clients, who typically self-insure their health plans and directly bear the cost of higher hospital prices. As a TPA, Aetna negotiates a variety of network design options from which employers choose, but Aetna does not insure the plans.

[3] Should the Court order any production, Aetna reserves the right to file a separate motion seeking reimbursement of its reasonable compliance costs pursuant to Fed. R. Civ. P. 45(d)(2)(B)(ii).