Re: *United States v. The New York and Presbyterian Hospital*, No. 26 Civ. 02480 (S.D.N.Y.)

Dear Judge Engelmayer:

Plaintiff United States respectfully requests that the Court order Defendant The New York and Presbyterian Hospital ("NYP") to produce documents responsive to three simple, clearly relevant requests contained in the United States's April 17, 2026, First Set of Requests for Production ("RFPs"). Ex. A. The United States seeks an order compelling Defendant to produce the following materials within fourteen (14) days of ruling: (1) NYP's agreements, including all amendments thereto, with all commercial payors, (2) documents since April 17, 2021 received, reviewed, or produced by NYP's Board of Directors, and (3) NYP's organization charts in effect at any time since April 17, 2021. In the one-hundred-and-one (101) days since the United States served these requests, NYP has failed to produce any responsive documents and even *failed to commit to producing* all responsive documents.[1] Remarkably, NYP refuses to produce these documents while at the same time seeking to compel an astounding 75-request subpoena to a non-party only one month after NYP issued the subpoena. ECF 34 (NYP's Motion to Compel Aetna).

## A. Background and Meet-and-Confer Process

Four hospital systems account for the dominant majority of the hospital services in the market pleaded in the complaint. Defendant NYP is the leader among these four systems. NYP deploys contract restrictions that reduce hospital competition between NYP and its few principal competitors. NYP's contract restrictions require Aetna, Blue Cross Blue Shield, Cigna, Emblem, UnitedHealth, and other commercial payors to guarantee NYP a place in every network and network feature offered to consumers. NYP has secured this placement despite its high prices and has preserved these provisions in its payor contracts despite payors' efforts to remove them from their NYP contracts. Payors want "to remove these terms because they effectively block" payors from developing networks to lower healthcare costs for New Yorkers. ECF 40 (Aetna Opposition to NYP's Motion to Compel) at 3. NYP's network-placement guarantees "protect and perpetuate NYP's ability to charge employers higher prices," *id.*, and reflect its bargaining power over payors. Any payor that does not have NYP in at least one of its health plan networks will not be competitive selling health plans to employers with employees living and working in Manhattan, Queens, Brooklyn, and The Bronx, and to individuals living and working in these boroughs. Because of NYP's bargaining power, payors have not succeeded in removing these significant impediments to hospital competition. Since NYP's network-placement guarantees harm hospital competition, they violate Section 1 of the Sherman Act.

NYP lodged a litany of boilerplate objections in the responses and objections to the RFPs ("R&Os") served on May 18, 2026. Ex. B. Counsel for the United States engaged counsel for NYP in an effort to resolve NYP's objections. These failed efforts include a June 19 telephonic meet and confer, and written correspondence, *see* June 5, 2026 Letter from S. Mulloy to D.

---

[1] NYP has also to date failed to commit to produce all documents responsive to the other requests contained in the RFPs. If NYP does not abide by its discovery obligations, the United States may in the future seek the Court's assistance in compelling production of documents responsive to those requests. In contrast, the United States has committed to producing all materials collected during its pre-complaint investigation of NYP, except for materials NYP produced.

The Honorable Paul A. Engelmayer
Page 2

Munkittrick (Ex. C); June 19, 2026 Letter from S. Mulloy to C. Kass (Ex. D); July 3, 2026 Letter from C. Kass to S. Mulloy (Ex. E); July 16, 2026 Letter from S. Mulloy to C. Kass (Ex. F). Because of NYP's refusal to budge on these simple requests, the United States filed this motion.

**B. The Court should compel NYP to produce its contracts with all commercial payors, board documents, and organizational charts.**

As the party resisting discovery, NYP bears the burden to show why it should not be compelled to produce the requested documents. *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 2015 WL 4033019, at *5 (S.D.N.Y. June 29, 2015) (citation omitted) ("If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied.").

NYP cannot meet its burden. Although NYP asserted a long list of boilerplate objections, lack of relevance appears to be the only objection that NYP is continuing to assert. Even though NYP's current and past contracts with payors, Board materials, and organization charts are highly relevant to this action, NYP has not committed to producing the documents the United States has requested.

**Request 3: NYP's Agreements with Payors.**[2] The United States requested that NYP produce all of its commercial insurance contracts. Contravening Federal Rule 26(b), NYP has asserted the unilateral right to decide which contracts are relevant to this litigation. Specifically, NYP claims that it has "already produced the operative agreements with the *Relevant Payors*," Ex. B at 4 (emphasis added), and refuses to produce any agreements besides those with just five insurers (Aetna, Blue Cross Blue Shield, Cigna, Emblem, and UnitedHealth). Ex. B at 2–3. Although NYP's anticompetitive contracts with these health plans are certainly relevant, other commercial payors are also relevant to this action. Health plans with small market shares have even greater incentives to innovate. Indeed, NYP publicly identifies other commercial health plans with which it has agreements on its website. *See* NewYork-Presbyterian, "Hospital Participating Plans," https://www.nyp.org/patients-visitors/paying-for-care/hospital-participating-plans (Ex. G). NYP touts to its current and potential future patients the very same agreements that it asserts are not relevant. NYP cannot have it both ways.

NYP similarly cannot carry its burden of showing an undue burden from searching for and producing its agreements with payors. There are a finite number of commercial payors with which NYP contracts, and such contracts are often kept in a central repository. This means the agreements may be identified and gathered on a go-get basis.

**Request 4: NYP's Board Documents.**[3] NYP objects to producing any NYP board materials that do not relate to a set of topics it unilaterally selected: "insurers, insurer or provider

---

[2] Request No. 3 requests "Without regard to date, all agreements and contracts, including all amendments, between the Organization, or any hospital or hospital system that the Organization operates, manages, or affiliates with, and any Payor." Ex. A at 13.

[3] Request No. 5 requests "All documents or materials received, reviewed, or produced by the New York-Presbyterian Board of Directors." Ex. A at 13.

The Honorable Paul A. Engelmayer
Page 3

contracting, competition nationally or in the relevant area, plan design, network design, steering, provider rates, and market shares." Ex. E at 4. While those are relevant topics, there are many others, such as NYP's analysis of the New York healthcare landscape, its market position, NYP's or other competing providers' acquisitions or expansions of hospitals or facilities, NYP's investment plans and strategy, financial and regulatory barriers to entry, financial strategy and analysis, and the cost of care, among others. In short, all board meeting materials and information submitted to Defendant's board are relevant in this case because the materials reflect the information that NYP senior executives consider important enough to present to the Board. NYP produced an incomplete set of board materials in the pre-Complaint investigation. Even NYP's deficient production demonstrates the breadth of relevant topics contained in NYP's board materials, including strategic planning documents, quality reporting, and important financial information. Furthermore, any attempt to sort and filter board materials by topic would only require additional time and expense while producing the board materials in full subject to any validly asserted and logged privileged claim would impose *less* burden on NYP.

**Request 1: NYP's Organization Charts.**[4] The United States requested NYP's organization charts in effect at any time since April 2021. Organization charts are obviously relevant—and indeed necessary—for identifying individuals who may have documents or testimony relating to the claims and defenses in this litigation. NYP agrees that refusing to produce organization charts "prevent[s] the parties from engaging in any discussion about custodians or databases." ECF 34 (NYP's Motion to Compel Aetna) at 3. NYP abandoned its relevance objection on July 3 and indicated that it was still searching for organization charts. *See* Ex. E at 3. Nevertheless, more than three months since being served with Plaintiffs' RFP for organization charts and more than three weeks since confirming their relevance, NYP has failed to produce any organization charts, which has slowed Plaintiffs' ability to begin discovery efficiently.

Respectfully submitted,

By:

PAUL J. TORZILLI (202) 476-0547
SEAN P. MULLOY (202) 765-4926
*Counsel for Plaintiff United States*

Cc:    All counsel of record (via ECF)

---

[4] Request No. 1 requests "One copy of each organization chart, including any updated or revised organization charts, listing all Senior Management and all Persons responsible for (1) negotiating or enforcing the Organization's contracts with any Payor; (2) analyzing the Organization's contracts with any Payor; (3) recommending that the Organization's contracts with any commercial Payor be approved; and (4) approving the Organization's contracts with any commercial Payor." Ex. A at 12. The Instructions state that "these Requests seek all responsive documents in the Organization's possession, custody, or control that were created, modified, sent, or received within five years on the date which these Requests were received." Ex. A at 2.