# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

THE NEW YORK AND PRESBYTERIAN
HOSPITAL

    *Defendant.*

Civil No. 26-cv-02480-PAE-OTW
Judge Paul A. Engelmayer
Magistrate Judge Ona T. Wang

---

**PLAINTIFF'S FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS FROM**
**DEFENDANT THE NEW YORK AND PRESBYTERIAN HOSPITAL**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff United

States of America requests that Defendant The New York and Presbyterian Hospital ("New

York-Presbyterian") produce the documents requested below. Any documents the Organization

produces must be produced in accordance with the terms of any Protective Order in effect in this

Lawsuit, and any other applicable court orders in this case regarding confidentiality. Documents

shall be produced at the office of the U.S. Department of Justice, Antitrust Division, Healthcare

and Consumer Products Section, 450 Fifth Street NW, Suite 4100, Washington, DC 20530.

**INSTRUCTIONS**

1.   Documents already produced by the Organization in the Investigation, including

in response to any civil investigative demand issued to the Organization in the Investigation,

need not be produced in response to these Requests, unless required to comply with any

protocols to this Lawsuit concerning electronically stored information. This Instruction does not

1

necessarily obviate the need to search a document custodian or other location that was searched by you as part of the Investigation.

2.     Unless otherwise specified, these Requests seek all responsive documents in the Organization's possession, custody, or control that were created, modified, sent, or received within five years on the date which these Requests were received.

3.     In addition to the specific instructions set forth below, these Requests incorporate the instructions set forth in any Case Management Order ("CMO") or Protective Order entered in this Lawsuit, as well as Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Southern District of New York, to the extent those rules are not modified by any Court order. For each responsive document, except for documents for which the Organization claims a valid privilege, or that contain any PII or SHI, produce the entire document along with all attachments, enclosures, or "family" members, and all metadata associated with each such document. When a document contains both responsive and non-responsive content, produce the entire document including the non-responsive portions of the document. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the Organization must clearly indicate the portions as to which the privilege is claimed, and the Organization must produce the part of the document that the Organization does not claim is privileged, along with all "family" members and including all metadata. Each document must be produced in such a fashion, where applicable, to identify the natural person in whose possession, custody, or control they were found, or the server or central file in which they were found. Produce a legible and usable copy of each document requested together with all non-

identical copies and drafts of that document, consistent with the U.S. Department of Justice, Antitrust Division's electronically stored information (ESI) Standard Specifications used in the Investigation and provided with these Requests. Subject to any protocol concerning electronically stored information agreed to by the Defendant or ordered by the Court, all metadata of electronic documents must also be produced. The Organization must retain all of the original documents for inspection or copying throughout the pendency of this Lawsuit, any appeal(s), and any related proceedings.

4.      Any responsive document that has been altered, including by the addition of any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, or modifications, and other versions of a document is a responsive document in its own right and must be produced.

5.      Subject to the Definitions and Instructions in these Requests, and any protocols concerning electronically stored information ordered by the Court or agreed to by the Defendant, produce hard copy documents and electronically stored information in the form of production set forth by the U.S. Department of Justice, Antitrust Division's ESI Standard Specifications, used in the Investigation and provided with these Requests. Notwithstanding any other Instruction, hard copy documents must be submitted in the same order (organized by sequential document-control numbering) as they were found in the Organization's files at the time the documents were collected, and must not be shuffled or otherwise rearranged. For bound hard copy documents— including notebooks, notepads, journals, planners, or other documents bound by staples, binders, or paper clips, or other means—produce all printed pages of the bound hard copy document if any page or part thereof is responsive. For any responsive text messages, produce the surrounding thread of texts involving the same participants in that 24-hour calendar day and in

3

the same format as produced during the Investigation.

6.      If otherwise identical copies of a document are in the possession, custody, or control of more than one natural person or other document custodian, a copy of that document must be produced from each such natural person or other document custodian. The Organization may deduplicate to the extent permitted under and in compliance with the U.S. Department of Justice, Antitrust Division's ESI Standard Specifications, used in the Investigation and provided with these Requests.

7.      If any document is withheld based on an objection to any Request, all other documents responsive to that Request not subject to the objection must be produced.

8.      The specificity of any single Request shall not limit the generality of any other Request.

9.      Where a claim of privilege or other protection from discovery is asserted in objecting to any Request or sub-part thereof, and any document is withheld (in whole or in part) on the basis of such assertion, with the exception of those communications that are exempt under the CMO, the Organization shall provide a log ("Privilege Log") in Microsoft Excel format that identifies, for each document:

a.      the nature of the privilege or protection from discovery that is being claimed with respect to each document (including identification of whether the document is being withheld entirely or redacted);

b.      the following non-privileged metadata: all authors, addressees, and recipients of the document (including those copy recipients and blind copy recipients); the subject line (if an email) or the file name (if non-email); date of the document; type of document (*e.g.*, .pdf, Excel, .msg); Bates range;

family Bates range, if applicable; and custodian(s). The Organization shall also produce a separate index containing an alphabetical list (by last name) of each name on the Privilege Log, identifying titles (for party employees), Organization affiliations, the members of any group or email list on the Privilege Log, where practicable (*e.g.*, Board of Directors), and any name variations used in the Privilege Log for the same individual;

c.    a description of each document containing sufficient information to identify the specific subject matter of the document or communication and to enable Plaintiff to assess the applicability of the privilege or protection claimed and the name of the attorney(s) whose work gives rise to the privilege claim; and

d.    the identity of and any production Bates number assigned to any attachment(s), enclosure(s), cover letter(s), or cover email(s) of each document, including the information outlined in subsections above for each such attachment, enclosure, cover letter, or cover email.

Attachments, enclosures, cover letters, and cover emails shall be entered separately on the Privilege Log. The Privilege Log shall include the full name, title, and employer of each author, addressee, and recipient, denoting each attorney acting in a legal capacity with respect to the document with the letters "ESQ," except that identification of the name and the Organization affiliation for each non-Defendant Person shall be sufficient identification. The Organization shall also identify all Persons working in a legal capacity with respect to the withheld material other than attorneys, *e.g.,* paralegals and legal secretaries, who appear on the Privilege Log. Submit all non-privileged portions of any responsive document (including non-privileged or redactable attachments, enclosures, cover letters, and cover emails) for which a claim of

5

privilege is asserted, noting where redactions to the document have been made. When responsive, privileged documents attached to responsive, non-privileged documents are withheld from production, insert a placeholder to indicate a document has been withheld from that family.

10.     If the Plaintiff agrees to narrow the scope of any of these Requests to a limited group of custodians, a search of each custodian's files must include a search of the files of their predecessors and successors (if applicable); files maintained by their assistants or under their control; and common or shared databases or data sources maintained by the Organization that are accessible by each custodian, their predecessors (and successors, if applicable), or assistants.

11.     If the Organization is unable to produce a document that is responsive to a Request not due to a claim of privilege or other legal protection, describe the document, state why it cannot be produced, and, if applicable, state the whereabouts of such document when last in the Organization's possession.

12.     These Requests are continuing in nature, and the Organization's duty to supplement its production in response to these Requests pursuant to Federal Rule of Civil Procedure 26(e) is ongoing. Plaintiff reserves the right to seek supplementary responses and the additional supplementary production of documents before trial.

13.     Except as specified in Instruction 1, the fact that a document is in the possession of Plaintiff, or is produced by another Person, does not relieve the Organization of the obligation to produce all of the Organization's copies of the same document, even if the Organization's copies are identical in all respects to a document produced or held by another Person.

14.     To the extent the Organization contends that responsive documents in its possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to these Requests

for Production must identify the specific provisions of the protective order or agreement on which the Organization is relying and the efforts that the Organization has undertaken and will undertake to provide notice and obtain consents.

15.     Do not produce any PII or SHI before discussing the information with Plaintiff. If any document responsive to a particular Request contains PII or SHI that is not responsive to that Request, redact the unresponsive PII or SHI before producing the document. Provide any index of documents prepared by any Person in connection with the Organization's response to these Requests for Production that lists such redacted documents by document control number. If the index is available in electronic form, provide it in that form.

16.     In producing videos or podcasts, for any video or podcast publicly available on the Organization's website or published by the Organization or its representatives on any other website (including YouTube), the Organization may in the alternative submit written permission for the Plaintiff to download, preserve, and use any such video or podcast through the pendency of this Lawsuit. Should the Organization choose this alternative, in the event the Plaintiff are unable to download and preserve any such video or podcast, the Organization agrees to produce a copy of it upon written request.

17.     The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. Words in any gender form (including the masculine, feminine, or neuter) shall include each other gender.

18.     If, in responding to these Requests, the Organization encounters any ambiguities when construing a Request, instruction, or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

## **DEFINITIONS**

The terms defined and used in each of the Requests below should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure, the Local Rules, and any Protective Order.

1.      The term "the Organization," "you," "your," or "New York-Presbyterian" means The New York and Presbyterian Hospital, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all of their present and former directors, officers, employees, agents (including counsel and document vendors), representatives and any Person acting or purporting to act on their behalf. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between New York-Presbyterian and any other Person.

2.      The term "agreement" means any understanding, formal or informal, written or unwritten between two or more Persons.

3.      The terms "and" and "or" have both conjunctive and disjunctive meanings, and shall be construed as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed as being outside of its scope.

4.      The terms "any," "all," "each," and "every" shall be construed as encompassing any and all.

5.      The term "Collaborative Work Environment" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of

8

users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include Microsoft SharePoint sites, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

6.      The term "communications" means without limitation communications in oral or written form, including electronic communications, e-mails, facsimiles, telephone communications (including text messages), instant messages, memoranda, writings, audio recordings, meetings, interviews, correspondence, exchange of written or recorded information, face-to-face meetings, or any other form of transmission of information. The phrase "communications between" is defined to include instances where one party addresses the other party, but the other party does not necessarily receive the transmission or respond.

7.      The term "discussing" when used to refer to documents means analyzing, constituting, summarizing, reporting on, considering, recommending, setting forth, or describing a subject. Documents that are or contain reports, studies, memoranda, forecasts, analyses, plans, proposals, evaluations, recommendations, directives, procedures, policies, or guidelines regarding a subject should be treated as documents that discuss the subject. However, documents that merely mention or refer to a subject without further elaboration should not be treated as documents that discuss that subject.

8.      The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure, and will be interpreted consistently with any Local Rule. For the avoidance of doubt, "document" includes all electronically stored information, including all electronic communications and any attachments thereto (e.g., emails, text messages, instant messages and all attachments to them, chats, information stored on social media accounts like X

9

(formerly, Twitter), or Facebook, other Messaging Applications, and documents contained in Collaborative Work Environments), files, audio and/or video recordings, data, and databases. This term includes all metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document. A draft or non-identical copy is a separate document within the meaning of this term. This term also includes all writings and hard copy documents. A printout of an email or other electronic document, with or without writing or other markings, is a separate document within the meaning of this term.

9.      The term "including" means "including, but not limited to."

10.      The term "Investigation" means the investigation into the potential unlawful agreements between New York-Presbyterian and health insurance companies relating to steering restrictions and contracting conduct conducted by the U.S. Department of Justice, Antitrust Division, that preceded the Lawsuit.

11.      The term "Lawsuit" means the lawsuit filed by Plaintiff against The New York and Presbyterian Hospital pending in the United States District Court for the Southern District of New York, Case No. 26-cv-02480-PAE-OTW.

12.      The term "Messaging Application" refers to any electronic method that has ever been used by the Organization and its employees to communicate with each other or entities outside the Organization for any business purposes. "Messaging Application" includes platforms, whether ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack). "Messaging Application" may overlap with "Collaborative Work Environment."

A.      The term "Payor" means any Person providing commercial health insurance or access to Provider networks, including managed-care organizations, and rental networks (i.e.,

10

entities that lease, rent, or otherwise provide direct or indirect access to a proprietary network of Providers), regardless of whether that entity bears any risk or makes any payment relating to the provision of healthcare. The term "Payor" includes Persons that provide Medicare Part C plans but does not include Medicare (except Medicare Part C plans), Medicaid, or TRICARE, or entities that otherwise contract on behalf of Medicare (except Medicare Part C plans), Medicaid, or TRICARE.

13.     The term "Person" includes New York-Presbyterian, and means any natural person, corporate entity, partnership, association, joint venture, government entity, trust, or other legal entity. Any reference to a Person that is a business entity includes: that Person's predecessors (including any pre-existing Person that at any time became part of that entity after a merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, each other Person that is directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

14.     "Personally Identifiable Information" or "PII" means information or data that would identify an individual, including an individual's Social Security Number; or an individual's name, address, or phone number in combination with one or more of his or her (a) date of birth; (b) driver's license number, or other state or federal government identification number, or a foreign country equivalent identification number; (c) passport number; (d) financial account number; or (e) credit or debit card number.

15.     The terms "relating to," "relate to," and "relating thereto" mean in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or

11

stating.

16.     The term "Request" refers to any request identified within these Requests for Production.

17.     The term "Senior Management" means any board member, Organization officer, director, employee at or above the level of vice president, and employee with management responsibility for any business unit or service line.

18.     The terms "Sensitive Health Information" or "SHI" mean information or data about an individual's health, including medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. SHI relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

## DOCUMENT REQUESTS

1.     One copy of each organization chart, including any updated or revised organization charts, listing all Senior Management and all Persons responsible for (1) negotiating or enforcing the Organization's contracts with any Payor; (2) analyzing the Organization's contracts with any Payor; (3) recommending that the Organization's contracts with any commercial Payor be approved; and (4) approving the Organization's contracts with any commercial Payor.

2.     All documents relating to any formal or informal performance evaluations, reviews, or self-assessments for Steve Corwin, Brian Donley, Michael Breslin, Karen Westerfelt, Deepa Kumariah, Paresh Shah, Dov Schwartzben, Lauren Marino, Emily Goodwin, Avraham Munk, Carrie Elwood, Otto Lee, Smith Won, and Maggie Buehler (or the person

responsible for your employee health plan design and offerings).

3.    Without regard to date, all agreements and contracts, including all amendments, between the Organization, or any hospital or hospital system that the Organization operates, manages, or affiliates with, and any Payor.

4.    All documents, regardless of the date of such documents, responsive to the Civil Investigative Demand issued to New York-Presbyterian on April 22, 2025 in connection with the Investigation, that were withheld or redacted on the basis of a claim of privilege or work product protection for which the Organization provided (1) inadequate or deficient information from which Plaintiff can assess the Organization's privilege claims in the Organization's privilege log of March 8, 2026 or (2) sufficient information in the Organization's privilege log to establish that the document is in fact not privileged or protected by the attorney work product doctrine. For avoidance of doubt, this Request is focused on the categories of documents identified in the privilege log deficiency letter from Plaintiff to Vinay Kohli, dated March 16, 2026, attached as Exhibit 1.

5.    All documents or materials received, reviewed, or produced by the New York-Presbyterian Board of Directors.

6.    All documents and communications discussing, evaluating, or analyzing New York Presbyterian's employer-sponsored health insurance plan(s) or health benefits offerings for its employees.

7.    All data received or collected by the Organization from any third-party in connection with the Investigation, Lawsuit, *Cement And Concrete Workers Dc Benefit Fund v. The New York And Presbyterian Hospital*, Case No. 2:25-cv-05023-ENV-AYS, *UFCW Local 1500 Welfare Fund v. The New York and Presbyterian Hospital*, Case No. 1:25-cv-5571-ENV-

AYS, or any other investigation of or lawsuit against the Organization in which the conduct at issue or allegations resemble the allegations in the Lawsuit.

8.      All documents, including any data, produced or received by the Organization in connection with *Cement And Concrete Workers Dc Benefit Fund v. The New York And Presbyterian Hospital*, Case No. 2:25-cv-05023-ENV-AYS, *UFCW Local 1500 Welfare Fund v. The New York and Presbyterian Hospital*, Case No. 1:25-cv-5571-ENV-AYS, or any other investigation of or lawsuit against the Organization in which the conduct at issue or allegations resemble the allegations in the Lawsuit.

Dated: April 17, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2026, I served the foregoing on Defendant's counsel of

record, including by email at the following email addresses:

vkohli@proskauer.com
ckass@proskauer.com
mrosman@proskauer.com
dmunkittrick@proskauer.com
pproctor@proskauer.com
rsamuels@proskauer.com
jefisher@proskauer.com

*Counsel for New York-Presbyterian*

/s/ Sean P. Mulloy
Sean P. Mulloy
Trial Attorney
Antitrust Division
450 Fifth Street N.W., Suite 4100
Washington, DC 20530
Telephone: 202-765-4926
E-mail: Sean.Mulloy@usdoj.gov