# EXHIBIT D



**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20530*

June 19, 2026

VIA E-MAIL

Colin Kass, Esq.
Proskauer
1001 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC  20004

> Re:    *United States v. NYP*, 26-cv-2480-PAE-OTW (S.D.N.Y.)
>        NYP's Objections to Plaintiff's 1st Set of RFPs

Dear Colin:

Thank you for the meet-and-confer on Thursday, June 11, 2026. I write to summarize the parties' discussion regarding New York Presbyterian's ("NYP") objections to Plaintiff's First Set of Requests for Production. This letter should not in any way be construed as agreement to any of NYP's objections, as we reserve all rights.

**General Objections**

As a general matter, you represented that the General Objections provided in your May 18, 2026 Responses and Objections ("R&Os") to the Plaintiff's First Set of RFPs only apply when you specifically invoke them in your specific responses to each RFP. We interpret this to mean that you are not asserting a General Objection if it has not been specifically invoked.

**Relevant Time Period**

In response to Instruction 2, calling for documents going back 5 years, you object (General Objection 2) to producing documents outside of the time range of April 22, 2025, through March 26, 2026. Your basis for this objection is that NYP produced documents through April 2025 in response to a different set of document requests, Plaintiff's Civil Investigative Demand ("CID") to NYP dated April 22, 2025. We noted that your discovery requests for non-party payors were for a similar five-year timeframe, and that your RFPs to Plaintiff have no time limit, and purport to seek documents relating to matters from over 26 years ago. You explained your position that DOJ had already received all the "key documents" during the investigation

1

phase. You stated that if there are documents for the earlier time period (before April 22, 2025), "we can talk about it."

As we explained on the call, there is no undue burden to identify, collect and produce documents responsive to the go-get Requests in Plaintiff's First Set of RFPs from the past five years. Such documents are highly likely to be relevant to this litigation, as they seek "key" information about NYP's core operations. The relevance is particularly true in light of the multi-year contracting cycles between NYP and payors central to this litigation. Further, Plaintiff's First Set of RFPs call for different documents than those previously produced by NYP in response to the CID. We therefore ask that you produce the documents for the 5-year timeframe identified in the Requests. Please confirm that you agree to a five-year period for the production of documents responsive to Plaintiff's First Set of RFPs.

**Topics Beyond "Payor Contracting"**

Though you assert in General Objection 3 that you object to producing any documents responsive to Plaintiff's First Set of RFPs that do not explicitly pertain to payor contracting, on the meet-and-confer, you explained that his objection specifically applies only to RFP 6, which seeks documents relating to NYP's employee health plans. You stated that it was your position that topics outside of payor contracting are not relevant to this case.

Plaintiff's position is that there are many topics relevant to the claims and defenses of this case outside of payor contracting, including rising healthcare costs, employers' attempts to find solutions to rising healthcare costs, relative costs of competing hospitals in the alleged relevant markets, competition, relevant product market, relevant geographic market, quality, and NYP's attributes, among others. There are also many factual propositions asserted in Defendant's Answer that fall outside the scope of payor contracting.

We address RFP 6 below. To the extent there are any other categories of documents that NYP will not produce on the basis of this objection, please explain what you are withholding.

**Custodians**

You object to producing documents from any custodians except Michael Breslin, Steve Corwin, Brian Donley, Deepa Kumaraiah, Lauren Marino, Avi Munk, and Dov Schwartzben (General Objection 6.a). On the meet-and-confer, we emphasized that almost all of the First Set of RFPs called for documents that could be identified without custodial searches (most likely through a targeted search or on a go-get basis). We explained that the limited set of custodians proposed in Defendant's R&Os were likely too limited and that there will be additional NYP custodians with relevant information. We added that Plaintiff reserves its right with regard to discussing and identifying appropriate custodians that may have documents and information responsive to specific requests for production. On the call, you conceded it was a "good point" that Plaintiff's First Set of RFPs entailed targeted searches or go gets that did not necessitate the identification of custodians to be searched. Given this discussion, we will proceed with the understanding that you will not stand on any custodian-based objection to any of Plaintiff's First Set of RFPs unless you promptly inform us otherwise.

2

**ESI**

With regard to your General Objection 6.c pertaining to electronically stored information, you confirmed that it is your intention to produce documents in conformance with the way you produced documents to the Division during the pre-Complaint investigation of NYP. You also confirmed that you intend to comply with the ESI protocol that was included in your subpoenas to non-party payors of June 5, 2026

**Protected Personal Information**

You object to producing "protected personal information" ("PPI"), which you define as "information that contains (i) personally identifiable information, such as social security numbers, home addresses, personal phone numbers; (ii) personal private information that is unrelated to work (*e.g.*, family pictures and texts); and (iii) protected health information as that term is defined in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as codified at 42 U.S.C. § 1320d, 45 CFR § 160.103, and any applicable New York State law." (General Objection 9). Additionally, in your R&Os you take the position that you reserve the right to withhold in its entirety any documents containing PPI and provide a log of any information withheld or redacted on the basis of this objection. On the meet-and-confer, we asked for more clarity on the categories of information included in your definition of PPI and your basis for withholding the entire documents(rather than redacting such information). We explained that the purpose of the Protective Order is to protect sensitive information and does not allow for withholding or redacting otherwise responsive documents. Further, we expressed concern that your definition of PPI is more expansive than the proposed definitions of Personally Identifiable Information or Sensitive Health Information in Plaintiff's proposed Protective Order. ECF 20-1, Plaintiff's Proposed Protective Order, Ex. A ⟦ 2. NYP's definition of PPI, for example, includes personal cell phone numbers, which could result in NYP fully withholding or redacting relevant and responsive text messages on employee's personal cell phones. On the meet-and-confer, you clarified that NYP will not withhold responsive text messages on the basis of this objection, nor would NYP redact personal cell phone numbers from the responsive messages as the numbers are necessary to identify the chat participants. You instead said this objection was most concerned with personal health information.

We do not agree with your objection. The presence of *some* health information in a responsive, non-privileged document is *not a basis to withhold the entire document*. In any event, Plaintiff's Proposed Protective Order protects Sensitive Health Information. *See* ECF 20–1 at ¶ 19 (defining "Sensitive Health Information" or "SHI"), ¶ 33 (protecting SHI). Additionally, Instruction 15 provides appropriate protection for Sensitive Health Information by stating that NYP should redact unresponsive SHI before producing the document or should discuss the information with Plaintiff before producing any SHI. Refusing to produce the document altogether is not a reasonable option. If there are categories of documents you plan to withhold or redact because they contain sensitive information, we are open to discussing it. To the extent NYP believes additional protection is required to protect health information, Plaintiff is available to meet and confer.

**Privilege Instructions**

Regarding your objection to the privilege logging instructions in the Requests (General Objection 11), we asked if there were particular portions of the instructions that you object to as imposing obligations beyond the Federal Rules. You said you did not review the list of categories in the instructions to "figure it out."

We would again ask that if there are specific categories of information requested by the privilege log instructions that you find objectionable, you identify those to us. Otherwise, we will assume that NYP will generally comply with the instructions, which Plaintiff believes are in line with the Federal Rules. Because your privilege assertions and logging have been inadequate, with multiple rounds of inadequate privilege log submissions that have put the privilege in jeopardy for multiple documents, it is important that we receive all information that we would reasonably need to ensure we can fairly assess any privilege claims you may make.

**Possession, Custody, and Control**

You object to producing documents in the possession, custody, or control of NYP's "domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all of their present and former directors, officers, employees, agents (including counsel and document vendors), representatives and any Person acting or purporting to act on [NYP's] behalf." (General Objection 13). On the meet-and-confer, you stated that you will produce documents from the selected relevant custodians and that you are not withholding any responsive documents based on the fact that they refer to or are relevant to a subsidiary or affiliated entity of NYP. If that understanding is incorrect, please let us know.

**RFP 1 (Org Charts)**

On RFP 1, you confirmed that NYP will produce the organization charts for time period of April 2025 to March 2026, the time period following the collection range for the pre-Complaint investigation. We asked if NYP possess organization charts for the time period between January 2021 and April 2025, and you stated that you would check. We stated that such older organization charts would be relevant and helpful in discussing potential predecessor custodians during such time frame.

Please confirm if NYP has organization charts going back to January 2021. If so, we would ask that NYP produce them.

**RFP 2 (Performance Evaluation Materials)**

Regarding RFP 2, we asked you to explain the basis of your objection to producing performance evaluation materials for the 14 individuals requested. You explained your position that Dov Schwartzben is the main relevant person involved in payor contracting as well as a few other people on the managed care team that he copies on emails. We explained that the list of individuals for whom we requested performance evaluations are either individuals who are involved in payor contracting, are on the NYP managed care team, or are otherwise likely to

4

have information relevant to this litigation. You also took the position that the performance evaluations, which reflect how employees performed at their job, are not relevant, and noted that such information may sometimes be personal.

As we explained on the call, there is no undue burden associated with collecting and producing the performance evaluation materials for this finite number of individuals, as such information is usually kept in a central repository or HR platform that could be easily gathered. These responsive documents are also relevant because they identify the duties and responsibilities of relevant individuals, which can aid in understanding who would be within the relevant scope of discovery, including depositions and custodial document collections. Additionally, employees' performance reviews often reflect and summarize goals and performance criteria that could relate to payor contracting, including steering provisions and employee plan design, which are clearly relevant to the claims and defenses in this case. We ask that NYP produce the performance evaluation materials for the 14 individuals that are responsive to this RFP.

We also asked for clarity on whether Maggie Buehler is the person responsible for NYP's employee health plan design and offerings. You stated that you would find out and let us know. Please provide this information by Friday, June 26.

**RFP 3 (Payor Agreements)**

We asked for the basis for your objections to (1) producing commercial payor agreements for payors besides Aetna, Anthem/Empire, Cigna, Emblem, and United, and (2) producing payor agreements prior to April 2025. You stated that this case turns on the five large payors and that you have a concern that it takes time and effort to pull contracts for the other payors, though you did not provide any information about the time and effort it may take to collect contracts for these other payors with whom NYP does business. You added that, in your view, other payors are not relevant. We explained that we disagreed and believe that the agreements between NYP and other payors are clearly relevant to the claims and defenses in the litigation, which are focused on NYP's contracting conduct in general. If your contracts with any commercial health insurer has anticompetitive provisions akin to the ones in your contracts with Aetna, Anthem/Empire, Cigna, Emblem, and United, we are entitled to know that information. If the contracts do not have such provisions, we are entitled to know that information as well. Though the presence other insurers in the New York area may not suit your preferred view of the facts, their contracts with your organization are still relevant. And smaller insurers may have relevance beyond their size, as small firms may have large incentives to innovate with steered plans. We also stated that we understand, based on experience obtaining discovery from similar organizations, that they typically keep their contracts in a central repository, which means collecting and producing such agreements would not be unduly burdensome. We also note that your subpoenas to non-parties define "Insurer" to expressly include the insurers for which you do not want to search for responsive contracts. *See, e.g.*, New York Presbyterian Subpoena to Aetna Health, Inc. at Definition 5 (defining "Insurer" to include "any other person engaged in the provision or administration of health benefits in the relevant area").

Given their relevance to this litigation, we again ask that NYP produce all its responsive agreements and amendments, regardless of date, with the finite number of commercial payors with whom NYP contracts. Please let us know whether you continue to maintain your objection to producing any such responsive documents.

**RFP 4 (Documents Improperly Withheld on Privilege Log)**

We asked you to confirm that you will re-review NYP's privilege log submitted during the pre-Complaint investigation and that you will produce non-privileged documents on the log. After acknowledging that the previously submitted privilege log was "screwed up," you confirmed that you would re-review it and stated that NYP expects to be able to produce a revised log, and any non-privileged documents reflected on the log, in a few weeks. If you are unable to produce your updated privilege log by July 10, please let us know promptly.

*Non-Responsive Documents*

In your Response to RFP 4, you state "To the extent NYP determines after further review that a document is not responsive to the CID, it will remove the document from the log and not produce it." We asked if there were any other categories of documents, besides documents that are not responsive to the CID, that you plan to withhold. You confirmed that you would produce all non-privileged documents responsive to the CID listed on NYP's previous privilege log. To be clear, the RFP asks for *all documents* that you have withheld on the grounds of privilege, not only the ones that you *ex post* decide to identify as responsive to the CID. Proskauer has had more than a year to rectify relatively straightforward privilege issues and admittedly "screwed up."

*Third-Parties*

We asked for NYP to explain its position regarding whether the inclusion of Bill Gold, an outside consultant and President of Gold Health Strategies, Inc., on communications breaks any privilege claim. You stated that your position is that the inclusion of Mr. Gold on NYP's communications does not break privilege. You said NYP's position is that Mr. Gold, whom you concede is not an employee of New York Presbyterian, is functionally equivalent to a NYP employee. We asked if you could provide any supporting authority for NYP's position. You refused to provide any authority. As explained in our previous privilege log deficiency letters, it is Plaintiff's understanding that Mr. Gold is not an attorney, not an employee of NYP, and that his role is not that of a functional equivalent NYP employee. Plaintiff takes the position that the inclusion of Mr. Gold on any communication renders the communications not protected by the attorney-client privilege. Please clarify if there is additional information that you believe suggests there is a basis to support a privilege claim for such documents. If not, we again ask you to produce communications with Mr. Gold that are on NYP's previous privilege logs. We also note that you specifically declined to identify authority supporting your position. Declining to provide authority during the meet and confer process makes it difficult to define, refine, and resolve disputes. If you continue to refuse to provide legal authority for your positions, it is more likely that the parties will take unnecessary disputes to the Court to resolve. We therefore reiterate our request that you provide authority that supports your position on communications

6

including Mr. Gold and as to why NYP has not waived its privilege claims by not properly documenting its claims during the investigation.

We also note that Mr. Gold is only one of many third-parties contained in NYP's most recent privilege log. As we have raised in our previous deficiency letters, NYP's log and legend contains at least 1107 individuals who are not NYP employees or attorneys, and appear to be third parties that would break any attorney-client privilege claim. If there are other third-parties in NYP's log and legend that you take the position do not break privilege, please let us know who those individuals are and your basis for why the individual does not break privilege.

*Log Descriptions That Establish Documents Are Not Privileged*

We also raised that for 978 documents on NYP's log, the description provided indicates that the document is not privileged or does not have privileged information. Examples of these descriptions include "Email containing privileged individuals but does not contain privileged communication." You acknowledged that there were significant issues on the log. We ask that such documents be produced.

*Documents Containing No Attorney*

Our June 5, 2026 letter regarding your R&Os to the Plaintiff's First Set of RFPs also reiterates that there are at least 1907 documents for which you have claimed attorney-client privilege where no attorney was identified anywhere on the privilege log entry. We ask that these documents be produced, or ask that you provide further information as to why such documents are in fact privileged.

*Waiver of Privilege Claims*

As explained in our March 16, 2026 privilege log deficiency letter, and again in our June 5, 2026 letter, we take the position that given NYP's repeated failure to provide information adequate for the Division to assess NYP's privilege claim, despite multiple attempts by Plaintiff to highlight these issues, NYP has failed to carry its burden of establishing the presence of the privilege and its failures constitute a waiver of its purported privilege claims. If NYP disagrees, please provide an explanation of why NYP has not waived its privilege claims, as well as what authority NYP has for continuing to maintain its privilege claims.

**RFP 5 (Board Documents)**

We asked for your basis for withholding board documents (1) based on date (limiting the scope of your production to only after April 22, 2025) and (2) based on the content of the document not addressing payor contracting. You explained that you believe board documents that do not address contracting are not relevant. We explained that there are a larger number of relevant issues in this case, including for example, NYP market strategy, the rising costs of healthcare and attempts to address the issue, as well as competition between healthcare providers, among other topics. We explained that NYP's board documents likely touch on many

of these topics, and are thus relevant to this case. You said you would consider Plaintiff's position and take that back.

You also said that if the older documents were important to Plaintiffs, you would consider going back 5 years.

Given that we do not believe there is a legitimate objection to this request, we ask that NYP produce all of its board documents from April 2021 to the present.

Notably, you have subpoenaed non-parties for Board documents discussing a broad range of topics. For example, Request Fifty-Four (54) to Aetna Health, Inc. asks for "[a]ll board or board committee materials or minutes relating to NYP; provider contracting; profits and losses; cost of care; competition nationally or in the relevant area; plan design; network design; steering; or provider rates, medical loss ratios, premiums, enrollment, retention, or market share for any health plan offered in the relevant area." This Request appears to seek documents from a 5½-year period, commencing January 1, 2021. Since NYP is a party to this litigation, rather than a non-party whose burden the parties are obliged to minimize, *see* Fed. R. Civ. P. 45(d)(1), we expect NYP to produce all non-privileged Board materials from April 2021 to the present.

**RFP 6 (NYP Employee Health Plan Documents)**

We asked you to explain your justification for refusing to produce documents relating to NYP's employer-sponsored health insurance plans or health benefits offerings that would be responsive to RFP 6. You stated that such documents would not be relevant because none of the documents would be about excluding NYP to create a narrow network, and because such documents would be more about concepts like vertical integration or avoiding double marginalization. We explained that multiple employees of NYP, including Dov Schwartzben and Steve Corwin, testified during their pre-Complaint depositions that NYP on multiple occasions considered narrow networks for NYP's own employee health plan offering. Plaintiffs view documents relating to this consideration as highly relevant to this case because they include NYP's own analysis and assessments of the benefits and drawbacks of steering, narrow networks and/or tiered networks, such as analysis of potential cost-savings, potential drawbacks of such plans, and demand for such plans among NYP's employee, among other relevant topics. Because these materials may tend to disprove your claims that any network configuration other than what you characterize as "open" networks are beneficial in healthcare, we have the right to reasonable discovery on this topic.

Given that you do not have a valid relevance objection to this request, Plaintiffs request that you produce NYP's documents responsive to this request.

**RFP 7 (Data Collected or Received from Third-Parties)**

We clarified that what RFP 7 requests is distinct from RFP 8. We noted that RFP 7, which was written to mirror RFP 6 in Defendant's First Set of RFPs to Plaintiff, seeks data that was collected or received by NYP from any third-party in connection with the DOJ's Investigation or Lawsuit, or any of the private cases. Our understanding is that counsel is

8

unaware whether NYP possesses responsive data. Please confirm whether NYP possesses responsive data, and if so, whether you are withholding such data on the basis of any objections.

**RFP 8 (Documents Produced or Received in Private Suits)**

We asked if you have any documents responsive to RFP 8, and if so, for an explanation of your basis for withholding it. You clarified that to date only a small number of agreements between the plaintiffs in the private suits and Empire have been produced to NYP. You also explained that there is a stipulation in those cases stating that these documents would be treated as outside-counsel-eyes-only. You clarified that to date there is no protective order yet in the private suits. Please direct us to the language prohibiting you from producing to Plaintiff the already produced agreements in the private suits. *See* Instruction 14. Please also confirm that the stipulation in the private cases is the only basis upon which you will object to producing documents responsive to this RFP.

To the extent that there is future discovery in the *Cement and Concrete Workers* or *UFCW* cases that is responsive this RFP, we ask that NYP agree to produce such documents, subject to the terms of the Protective Orders in this case and those cases. Please let us know if you will agree.

Sincerely,

/s/ Sean P. Mulloy
Sean P. Mulloy
Trial Attorney, Antitrust Division
U.S. Department of Justice

9