# EXHIBIT E

 Proskauer Rose LLP   1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

July 3, 2026

**By Email**
Sean Mulloy
U.S. Department of Justice
Antitrust Division
450 Fifth Street N.W., Suite 4100
Washington, DC 20530

Re:    *U.S. v. NYP*, 26-cv-2480-PAE-OTW (S.D.N.Y.)
       *Response to June 19th Letter re NYP's R&O's to DOJ's 1st RFPs.*

Dear Sean:

We write in response to your June 5th and 19th letters and the parties' June 11th meet and confer regarding NYP's Responses and Objections to the DOJ's First Set of Requests for Production.[1]

### A.    *General Objections.*

In our R&O's, NYP asserted several general objections. In your June 19th letter, you assert that, on the meet and confer, NYP "represented that the General Objections … only apply when you specifically invoke them in your specific responses to each RFP," and that NYP is "not asserting a General Objection if it has not been specifically invoked." That is not what we said on the meet and confer. As we explained on our call, several general objections – General Objection 6 (Scope of Search), General Objection 7 (time, place, manner), and General Objection 2 (Supplemental Discovery Period) – apply across all RFPs, and were not repeated in response to each and every RFP. *See* NYP's R&Os, at 8 n.1. Other general objections, however, are, by their nature, specific to particular topics. For those, we endeavored to identify the specific RFPs that raised the concern by cross-referencing the applicable General Objection in our specific responses to your RFPs. At the end of each specific RFP, consistent with Fed. R. Civ. P. 34(b)(2)(C), we identified the categories of documents NYP intends to produce, with all other documents being withheld on the basis of its objections. To be clear, however, NYP is not waiving any specific or general objection, unless it does so expressly in writing.

### B.    *General Objection 2 – Relevant Period.*

In General Objection 2, NYP objected to the DOJ's blanket definition of the relevant period, particularly as it required us to redo efforts we had already undertaken in responding to the DOJ's CID during the Investigation. As we explained, while there may (or may not) be grounds for "topping off" the production to bring it current, going back before the time period the DOJ deemed relevant during the Investigation is generally unwarranted. In your June 19th letter, you

---

[1] This letter concerns DOJ's April 17, 2026 First Set of Requests for Production; NYP's May 18, 2026 Responses and Objections; the DOJ's June 5, 2026 and June 19, 2026 letters; and the parties' June 11, 2026 meet and confer.

**Proskauer»**                                                                     Page 2

argue that, for the "go-get Requests," there should be no burden.  As we explained, we believe this issue is better addressed in response to each specific request, as discussed below.[2]

### C.       General Objection 3 -- "Payor Contracting."

In General Objection 3, NYP objected to producing documents that are unrelated to payor contracting.  This is an example of a General Objection that applies to several specific RFPs. Therefore, we set forth the objection in detail in the General Objections, and cross-referenced it in the specific RFPs to which it applied.  *See* RFPs 2, 3, and 5.  In your letter, you assert that, on the meet and confer, we "explained that his [*sic*] objection specifically applies only to RFP 6."  That is not what we said.  For example, we plan to limit production of board materials (RFP 2) and annual personnel reviews (RFP 5) to payor contracting, and RFP 3 to the Relevant Payors.  As we explained, for RFP 2, we believe it is both inappropriate and irrelevant to seek performance reviews that are not relevant to the issues in this case.  Similarly, the NYP board discusses a range of issues that have nothing to do with any issue in this case.  Accordingly, we believe that documents that have nothing to do with payor contracting should be excluded.  That is, we do not believe specifications that call for "types of documents" – irrespective of any relevant subject matter – are appropriate requests.  If there are subjects beyond payor contracting that you believe are relevant, then we would be open to having a discussion about whether performance reviews and/or board materials discussing those subjects ought to be produced.

### D.       Custodians

In your letter, you assert that all of your requests "entailed targeted searches or go gets that did not necessitate the identification of custodians to be searched."  Despite this, you took issue with our objection to the scope of any custodian search beyond the individuals NYP identified.  In light of your concession that you are not seeking a custodial search, it would seem the entire discussion is moot.  For avoidance of doubt, however, we have not waived any objections to any custodial search and – in light of your concession – do not intend to undertake any custodial search in response to these requests.  If you would like to discuss the matter further, please let us know.

### E.       ESI

While NYP intends to make future productions in accordance with its prior productions, we have not reached any specific agreement with regard to ESI protocols.

### F.       PPI

We agree that a further meet and confer concerning PPI is warranted.  Please let us know your availability.

### G.       Additional Logging Requirements Not Specified By Federal Rule.

In your letter you assert that you "will assume that NYP will generally comply with the instructions that it believes are in line with the Federal Rules."  This is incorrect.  NYP intends to

---

[2] In support of your position that a broader date range should apply, you advance several arguments.  We do not believe it is productive to debate the issue outside of the specific requests.  Suffice it to say, we disagree with each of your arguments.

**Proskauer»**

comply fully with the Federal Rules without regard to your instructions.  NYP does not understand the Federal Rules to give the DOJ the right to assert any instructions whatsoever.

### H.    Possession, Custody, or Control.

NYP stands by its objections.  As you noted, this issue is largely governed by the scope of any custodian search.  Since your requests do not call for custodian searches (see above), this would seem to be a moot point.  In any event, obviously, if a document is found in the files of a custodian that NYP agrees to search, then it has "possession, custody, or control" of the document. NYP, however, objects to any obligation to search for documents beyond that to the extent such documents are not in the possession, custody, or control of NYP itself.

### I.    RFP 1 – Org Charts.

We are still checking whether we have organization charts back to 2021.  We will follow up separately.

### J.    RFP 2 – Performance Reviews.

Your June 19th letter does not address the concerns we stated in our objections.  As we explained, we agreed to produce the performance reviews that discuss payor contracting for the six individuals that have some involvement in payor contracting.  In response, you argue that performance reviews are important because they "identify the duties and responsibilities" of the fourteen people you identified.  That puts the cart before the horse.  You should identify the reasons why you need each person's performance review, and why such reviews are necessary – as opposed to a general job description.  Given the massive production NYP made during the Investigation, it is hard to believe you cannot make a threshold showing of relevance tied to each person, or explain what you need from each person's performance reviews that would help you prove a disputed fact.

Regarding Maggie Buehler, Ms. Buehler's role at NYP is Program Manager – Retirement & Benefits, Total Rewards. Her responsibilities are primarily administrative, include directing, administering, and implementing benefit plans for NYP's benefit-eligible employees, serviced by an internal call center. She has responsibilities for managing vendor relationships, and she participates in technology solutions and communications to facilitate benefits to employees. Ms. Buehler has no role whatsoever in employee benefit design or contract negotiations.

### K.    RFP 3 – Payor Agreements.

As we explained, because it requires significant effort to compile the full contractual history for each entity identified, it is important that we have a common list of payors for whom NYP will engage in that exercise.  We proposed the five insurers that the DOJ itself claims is dominant.  If you have other insurers you would like us to search, please identify them.

**Proskauer>>**                                                                      Page 4

### L.      RFP 4 – Privilege Log.

NYP is currently reviewing its CID privilege log.[3]  Given the size of the log, your arbitrary July 10th deadline is unworkable.  When we have a better sense of how long it will take to complete the log, we will let you know.  NYP, however, does anticipate that it will be producing any non-privileged documents, and supplemental log entries, on a rolling basis.

With respect to non-privileged, non-responsive documents, NYP stands on its objection.

With respect to Bill Gold, your letter mischaracterizes our meet and confer.  On the meet and confer, you asked for any cases that support NYP's contentions that NYP is entitled to maintain privilege over documents that were sent to or received by Bill Gold in connection with his work in assisting with payor contracting on behalf of NYP.  As we explained, a meet and confer is not an opportunity for the parties to engage in oral argument regarding their position or to exchange case law.  The parties are fully capable of conducting their own legal research.  To the extent the parties reach impasse on this issue, we will support our position with relevant authority.

With regard to other third parties or other alleged deficiencies, we believe any dispute is premature until you receive our revised privilege log.  To the extent you have concerns about any document's privileged nature (including but not limited to the inclusion of a third party on the document), we can address it at that time.  NYP declines to engage in a hypothetical discussion before then.

Finally, you state that the Division "takes the position" that NYP has waived privilege.  We disagree.

### M.      RFP 5 – Board Documents.

NYP will agree to go back to 2021 for relevant Board materials.  NYP, however, continues to object to producing all board materials, regardless of subject matter.  Indeed, in your letter, you specifically invoke NYP's request for insurer board materials as an appropriate model.  But NYP's request *is* limited to relevant subject matters.  While we believe the production of such materials should be limited "payor contracting," we are willing to expand it to board materials relating to insurers, insurer or provider contracting, competition nationally or in the relevant area, plan design, network design, steering, provider rates, and market shares.  Please let us know if that works for you.

### N.      RFP 6 – NYP's Own Employee Health Plan.

NYP does not believe that documents relating to its own employee health plan are relevant.  In your June 19th letter, you argue that, to the extent such documents bear on contracting generally outside the context of the employee health plan itself, such documents might be relevant.  But NYP has already searched for and produced documents relating to its payor contracting generally, so documents that concern the impact, if any, of employee contracts on broader payor contracting dynamics would have already been picked up by the Investigation production.  Since you have not

---

[3] As we noted in our objections, this litigation is not the appropriate forum in which to litigate NYP's CID production or prior privilege claims.  Nor does our offer to re-review its CID log waive NYP's jurisdictional or other objections, or give the DOJ the right to use this litigation to seek post-lawsuit compliance with the investigational requests.

**Proskauer»**

identified any documents concerning NYP's employee health plan that would be relevant to this case, other than those that have already been produced, we do not believe a further search is warranted. That said, we are willing to further meet and confer to further discuss this issue.[4]

### O.    RFP 7 – Data Collected or Received from Third Parties.

You assert that RFP 7 "was written to mirror RFP 6 in Defendant's First Set of RFPs, [which] seeks data that was collected or received by NYP from any third-party in connection with the DOJ's Investigation or Lawsuit." There is no parallel between the two situations. Unlike the DOJ, NYP did not have the power of compulsory process during the Investigation and has issued no subpoenas in the class actions. In any event, other than the Anthem agreement that two of the named plaintiffs produced pursuant to court order (and pursuant to a protective order that prohibits re-production in this case), NYP has not received any documents from third parties pursuant to any compulsory process. NYP maintains its objection to producing documents that its counsel has collected through its own search of public records.

### P.    RFP 8 – The Anthem Agreement.

In your letter, you ask us to "direct" you to the protective order in the class action that prohibits NYP from producing the Anthem agreement the plaintiffs produced to us. We direct you to *UFCW Local 1500 Welfare Fund v. New York Presbyterian*, No. 1:25-cv-5571, ECF 33 (E.D.N.Y.). We confirm that this is the only basis on which we object to producing the document, other than the fact that you still refuse to agree to the protective order that NYP has proposed and that the Court has largely approved of. As to future document productions in the class actions, NYP will address the issue when, or if, it arises. NYP is not clairvoyant, and thus is unwilling to pre-commit to producing documents it has not yet requested or seen.

Best regards,

/s/ *Colin Kass*

---

[4] During the status conference, you indicated that you planned on serving a second set of RFPs. It may be worth folding this request into that second set, since RFP 6 would appear to call for a custodian search.