# EXHIBIT F



**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20530*

July 16, 2026

VIA E-MAIL

Colin Kass, Esq.
Proskauer Rose LLP
1011 Pennsylvania Ave, N.W.
Suite 600 South
Washington, DC 20004

> Re: *United States v. The New York and Presbyterian Hospital*, 26-cv-2480-PAE-OTW (S.D.N.Y.), NYP's Objections to Plaintiff's 1st Set of RFPs

Dear Colin:

This letter responds to your July 3, 2026, letter regarding your Responses and Objections to Plaintiff's First Set of RFPs to NYP.

### A.    General Objection 2 – Relevant Time Period

Plaintiff disagrees with your conclusion that "going back before the time period the DOJ deemed relevant during the Investigation is generally unwarranted." July 3, 2026 Letter from C. Kass to S. Mulloy, at 1. You have not responded to Plaintiff's arguments identified in our meet and confer and June 19th letter that demonstrate why your objection to a 5-year relevant period is without merit:

- In your Answer, NYP has raised issues and defenses[1] that extend to a time period before the time period of documents produced during the Investigation. Documents from the time period going back to 2021 are therefore relevant to the claims and defenses in this case.
- You call DOJ's proposed time period a "blanket definition" yet Defendant uses practically the same relevant period definition in its subpoena to non-parties in this action. Surely what is appropriate for non-parties is an appropriate relevant period for

---

[1] Examples of such statements in NYP's Answer include that the "All Products Clause" in NYP's contracts with payors are "decades-old" and that "insurers themselves demanded" them when they were put into place. *See* Answer at 1, 6. NYP has also made many claims about "insurers repeatedly threaten[ing] to exclude NYP" and that "several have made good by notifying members of NYP's exclusion." Answer at 4. A broader timeframe back to 2021 will capture more time period when such events would have occurred.

1

discovery on Parties, and even more so since you "must take reasonable steps to avoid imposing undue burden or expense on a person subject to" a document subpoena, Fed. R. Civ. P. 45(d)(1).

- Your requests to Plaintiff have no time limit whatsoever, and you have explicitly requested documents from the Division's *Aetna-Prudential* matter, an enforcement action in a different market that was resolved in 1999, over 26 years ago.
- For requests that are go-get, there is no undue burden with producing the documents with a 5-year date filter.
- Last, as you represented to the Court in a motion compelling a non-party to produce documents responsive to requests that have *no date limitation*: date bounds are best managed by compliance plans for specific requests "not arbitrary date cut-offs," *USA v. New York* Presbyterian, 1:26-cv-2480 (S.D.N.Y.) ECF 34 ("NYP's Motion to Compel Aetna") at 3.

In any case, the fact that the Division limited its discovery during the investigation does not make other materials irrelevant. Plaintiff is willing to consider date ranges with respect to individual requests if you provide a persuasive reason but in general will continue to assert that a 5-year timeframe going back to 2021 is appropriate. By 5pm on Monday, July 20, please confirm if you will agree to produce all documents from the 5-year period, or if you intend to continue to stand on this objection.

**B.     General Objection 3 – "Payor Contracting"**

In your July 3 letter, you state that you object to producing documents that do not relate to payor contracting, and state that this objection applies to RFPs 2 (Performance Reviews), 3 (Payor Agreements), and 5 (Board Documents). This objection makes no sense with respect to RFP 3, which seeks your agreements with payors, as all such agreements are necessarily related to payor contracting. We do not agree that you can limit your search and production of documents to "payor contracting" for RFPs 2 and 5. We will respond to this objection for each of those RFPs below.

**C.     Custodians**

The only relevant discussion of custodians for this set of RFPs is with respect to RFP 6, which requests "All documents and communications discussing, evaluating, or analyzing New York Presbyterian's employer-sponsored health insurance plan(s) or health benefits offerings for its employees." As discussed below, NYP should identify which custodian or custodians would be the appropriate NYP employee(s) that would have documents responsive to this RFP. For future sets of RFPs, Plaintiff will discuss appropriate custodians for a reasonable search for those RFPs at that time.

**D.     RFP 1 – Org Charts**

You stated you were checking whether you have organization charts back to 2021. This is an important first step in beginning to discuss appropriate set of custodians for your compliance with current and future discovery requests. Indeed, you have conceded as much when you represented to the Court that you need a non-party to produce such "organizational information *within seven days*," because, by your lights, failure to do so within 38 days of the request is so long it requires court intervention. NYP's Motion to Compel Aetna at 1, 3 (noting

June 8 subpoena issuance, seeking organization information compliance within seven days). Therefore, let us know by 5pm on Monday, July 20 whether you will commit to producing organization charts responsive to RFP 1 dating back to 2021, seven days from today, that is by Thursday, July 23. If you do not have organization charts going back to 2021, please let us know how far back you have them.

### E.    RFP 2 – Performance Reviews

RFP 2 requests "All documents relating to any formal or informal performance evaluations, reviews, or self-assessments for" 14 key employees at NYP. You state that you have agreed "to produce the performance reviews that discuss payor contracting for the six individuals that have some involvement in payor contracting." You do not identify the six individuals in your most recent letter but we understand you are likely referring to Steve Corwin, Brian Donley, Michael Breslin, Dov Schwartzben, Lauren Marino, and Avi Munk. Please confirm if those are the six individuals you are referring to. Please confirm if you agree to produce these performance reviews going back to 2021.

You continue to object to producing performance review materials for the other eight individuals requested by RFP 2. You ask that we identify the reasons why we need performance reviews for the other eight individuals we identified. As we've already explained, these fourteen individuals are either members of NYP's Managed Care team (that is, the team that directly and indirectly negotiates contracts with commercial payers or enforces the contract terms) or senior leaders at NYP. These are individuals very likely to possess information relevant to the claims and defenses at issue in this case, and are likely to be key deponents or trial witnesses in this litigation. Performance reviews and self-assessments include statements made by the employee and/or their supervisor about their role, goals and objectives, and the duties performed in each employee's job. These are witness statements, and/or statements from witness's supervisors. And the discussion contained in performance evaluations is at the heart of the witness's job duties. Such statements made by employees and by their employer about job and work functions are highly relevant and Plaintiff is entitled to them in discovery.

You asked that we make a showing of relevance for each individual. We did this already, but you failed to respond to our explanation of relevance for these individuals included in our June 19th letter. To summarize those points for your benefit, four of these eight individuals are members of NYP's managed care team and are involved in payor contracting. These include Emily Goodwin, Carrie Elwood, Otto Lee, and Smith Won. The others are members of the NYP's senior leadership team. These include Karen Westerfelt, Group Vice President, Strategic Initiatives and Chief of Regulatory Planning; Deepa Kumariah, current Chief Operating Officer and former Chief Medical Officer; and Paresh Shah, former Chief Operating Officer and current Executive Vice President Eastern Market for NYP.

The last of the 14 individuals was Maggie Buehler or the person responsible for NYP's employee health plan design and offerings. You clarified that Ms. Buehler has no role relating to employee benefit design. Please clarify who would be the appropriate employee at NYP "responsible for your employee health plan design and offerings." RFP 2 requests performance review materials for such employee.

You also object to producing any performance reviews unrelated to payor contracting on the basis that they are not relevant. Any objection based on irrelevance lacks merit. Performance reviews may discuss a litany of tasks and goals beyond payor contracting that are still relevant. Examples of such topic topics include NYP's market performance and market shares, competition, business strategy, pricing and other strategies, NYP's financial performance (NYP's costs, revenue and margins), and the quality of NYP's services. There are many other relevant topics and Plaintiff need not provide you a comprehensive list. Limiting a search to only performance reviews relating to payor contracting excludes performance reviews that are likely to discuss many topics relevant to the claims and defenses in this suit and are therefore relevant.

You have also not claimed an undue burden in complying with this request as such documents could be gathered on a go-get basis from NYP's HR repository or review platform. Attempting to sort and filter the reviews by topic (such as excluding reviews that are not about payor contracting) is more burdensome and time-intensive than just producing the reviews for the requested employees in full.

Please let us know by 5pm on Monday, July 20 if you will agree to produce the performance review materials in full for the 14 employees, for the 5-year period requested, or if you intend to continue to stand on your objections.

### F.        RFP 3 – Payor Agreements

RFP 3 requests all agreements and contracts between NYP and any commercial payor. Although you concede that payor contracting is a relevant topic to the claims and defense in this action, you selectively ignore your own position when it comes to the simple, not unduly burdensome request to produce your commercial payor contracts. You have objected to producing any of NYP's agreements beyond only five insurers that you deemed important. This is completely unacceptable and there is no basis for your objection. You ask that we identify payors for you to search but it is not Plaintiff's obligation to provide a list of insurers. It is NYP's obligation to conduct a reasonable search for documents in its possession, custody, and control responsive to this request. NYP knows–or should know–the commercial payors with which it contracts. NYP identifies the participating insurance plans on its website. *See* https://www.nyp.org/patients-visitors/paying-for-care/hospital-participating-plans. As a start, NYP should produce all the agreements with insurers for commercial health insurance plans listed on NYP's website. Or NYP can conduct a reasonable search and propose a list of payors based on the commercial payors with which it contracts.

Please let us know by 5pm on Monday, July 20, which commercial payor agreements you will produce in response to RFP 3, and when you will produce them. If you intend to stand on your objection and are unwilling to conduct a reasonable search for NYP's agreements with commercial payors beyond the five insurers you identify, we will consider this an impasse.

### G.        RFP 4 – Privilege Log Documents

We understand that NYP is currently reviewing its CID privilege log and plans to submit a revised log and produce any non-privileged or downgraded and redacted documents on the log that are responsive to the CID. You have called our July 10 deadline unworkable but NYP's lack of a proposed timeline is unworkable. It has been nearly 7 months since we first identified significant deficiencies with NYP's privilege log in a letter dated December 19,

2026. Likewise, it has been approximately 4 months since we identified continuing deficiencies in your most recent revised log, submitted on March 8, 2026. In this time you have identified and clawed back numerous documents you claim are privileged. *See* April 24, 2026 letter from V. Kohli to K. Knutsen; June 2, 2026 letter from V. Kohli to K. Knutsen; June 8 letter from V. Kohli to K. Knutsen. But you have not produced a single downgraded document. By 5pm on Monday, July 20, we request that NYP propose a timeline for when it will make its first rolling production, as well as a proposed deadline for when NYP will produce its revised log. If you cannot manage to propose a reasonable timeline by Monday, July 20, nearly eight months after we first identified deficiencies in your log, we will consider it an impasse on this issue.

With regard to Bill Gold, your letter mischaracterizes our discussion in the meet and confer. When asked if you could provide authority to support the proposition that Bill Gold, a third party, does not break privilege, you stated that you will not engage in that discussion in a meet and confer. In fact, despite multiple repeated requests, you have refused to provide any factual basis or legal authority to support your assertion that the inclusion of Bill Gold on communications would not constitute waiver. *See* December 19, 2025 letter from S. Mulloy to V. Kohli at 4; March 16, 2026 letter from S. Mulloy to V. Kohli at 6. As we have explained, your refusal to engage in this discussion during meet and confers and in correspondence makes it difficult to define, refine, and resolve disputes and is likely to result in parties taking unnecessary disputes to the Court for resolution. This is a counterproductive approach to litigation. You provide no response to this. You also provide no response to our request that you provide authority that supports your position regarding why the inclusion of Mr. Gold on communications does not waive any privilege claim.

You conclusorily state you disagree with the United States' position that NYP has waived its privilege claims by failing to correct significant deficiencies in your privilege log over the course of 7 months but you provide no explanation or authority as to why NYP has not waived its privilege claims given that it has, in your own words, produced a "screwed up" privilege log, despite multiple attempts by Plaintiff to highlight these issues. Simply put, a privilege claim is a shield from discovery only if it is validly asserted. Its valid assertion requires two acts. First, the person "must" "expressly make the claim." Fed. R. Civ. P. 26(b)(5)(A)(i). Second, the party "must" provide a reasonable amount of information that "will enable the other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). For privilege log entries that we have flagged, sometimes on multiple occasions, as deficient, you did not perform that two acts that you "must" in order to assert validly the privilege.

Plaintiff maintains its position that NYP's repeated failure to remedy such deficiencies constitutes both failure to assert the privilege in the first instance and waiver of its privilege claims.

## H.    RFP 5 – Board Documents

In your July 3 letter, you agree to produce NYP Board materials going back to 2021, but you continue to propose limiting which board materials you will produce based on your arbitrary and unilateral choice of topics. We understand you are no longer standing on your objection to producing documents unrelated to payor contracting, but you propose producing materials related to the following topics only: "insurers, insurer or provider contracting, competition nationally or in the relevant area, plan design, network design, steering, provider rates, and market shares." July 3, 2026 Letter from K. Cass to S. Mulloy, at 4. Plaintiff cannot

agree to limit the scope of board documents by topic. While the topics you highlight are certainly relevant issues, there are many other relevant topics as well. Some non-exhaustive examples would include NYP's market position and market power, quality of care analysis or comparisons, physician or provider referral patterns, NYP or other competing provider's acquisitions or expansions of hospitals or facilities, investment plans and strategy, financial strategy and analysis, among many other topics. Other examples include topics requested by NYP in its own subpoenas to payors for their board materials, such as cost of care, profit and losses, and medical loss ratios. Plaintiff need not identify an exhaustive list of topics as everything contained in NYP's board documents is relevant to this case.

If NYP is unwilling to produce its board documents in full, subject to appropriate redactions for validly asserted privilege claims, we are at an impasse on this RFP and will seek to compel the production of such materials. Please let us know by 5pm on Monday, July 20 if NYP will produce its board documents in full for the 5-year period, or if NYP intends to stand on its objection.

### I.        RFP 6 – NYP's Own Employee Health Plan

NYP's assertion that because it has already produced documents relating to payor contracting generally, documents concerning negotiations with payors for its own employee contracts "would have already been picked up by the Investigation production" is not sufficient. This is not a suitable replacement for a reasonable inquiry to determine what documents in NYP's possession, custody, or control are responsive to RFP 6. This request seeks all documents relating to its employee health plans because there may be documents evaluating the viability, costs, and desirability of the use of narrow network plans or tiered plans in the network design for NYP's own employees. Such documents would not have been captured in NYP's Investigation production because the custodians searched are not necessarily the individuals responsible for such analysis and because the CID request did not specifically request this. Additionally, the timeframe covered by the Investigation production is much more limited as this request seeks documents going back to 2021. We ask that by 5pm on Monday, July 20 NYP make a proposal regarding which NYP employee or employees would be the appropriate custodian likely to have documents responsive to this request.

### J.        RFP 7 – Data Collected or Received from Third Parties

You state that "NYP has not received any documents from third parties pursuant to any compulsory process." July 3, 2026 Letter from C. Kass to S. Mulloy, at 5. To be clear, this RFP requests data from any third-party in connection with the Investigation, Lawsuit, related private litigations, or similar investigations or lawsuits, obtained with or without a compulsory process. Please confirm whether NYP has *any* data responsive to RFP 7. By negative implication, your response indicates you do have data responsive to RFP 7, though it was obtained through means other than compulsory process. Let us know by 5pm on Monday, July 20 whether we have drawn an incorrect inference. If not, please confirm that you will produce such responsive data.

### K.        RFP 8 – Documents Produced or Received in Private Suits

Plaintiff understands that NYP does not have any documents responsive to this RFP other than a single agreement with Anthem, which is currently subject to a confidentiality

6

stipulation. Plaintiff agrees the parties can discuss future discovery materials in the private suits that may be responsive to this Request at a later date once those materials are exchanged. It is our expectation that you will make appropriate arrangements in the private suits so that confidentiality is not a future bar to your production of responsive materials to Plaintiff.

Sincerely,

/s/ Sean P. Mulloy
Sean P. Mulloy
Trial Attorney, Antitrust Division
U.S. Department of Justice

7